John A. SCHEXNIDER,
Plaintiff-Appellant,

v.

McDERMOTT INTERNATIONAL, INC., et al., Defendants-Appellees.

No. 86-4506.

United States Court of Appeals, Fifth Circuit.

May 29, 1987.

Rehearing and Rehearing En Banc Denied July 15, 1987.

---

Joseph J. Weigand, Jr., Houma, La., for plaintiff-appellant.

James B. Doyle, Henry E. Yoes, III and Edmund E. Woodley, Lake Charles, La., for defendants-appellees.

Before POLITZ, JOLLY and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

John Schexnider appeals from the district court's dismissal of his suit against the appellees on *forum non conveniens* grounds. Although we agree with the district court that Australian rather than United States law governs this maritime action, we conclude that the district court did not act within its discretion when it dismissed Schexnider's suit for *forum non conveniens* reasons.

I

The appellant, John A. Schexnider, is an American citizen. He alleges an injury, occurring on April 12, 1981, while serving as a crewmember of the Derrick Barge 21 (DB), which was performing work in the Java Sea off the coast of Indonesia. At the time of his accident, Schexnider was working pursuant to an employment contract with McDermott International, Inc., a Panamanian corporation. On March 6, 1981, in New Orleans, Schexnider had entered into the contract that called for him to work "in the Southeast Asia Area."

During Schexnider's service aboard the DB, the vessel flew the Australian flag. The DB was built in Australia, had been purchased by McDermott Australia, Ltd. in 1966, and had been refitted for use in Indonesian waters. At no time had the DB ever been within the territorial waters of the United States. At the time of the accident the DB was owned by McDermott Australia, Ltd., and was chartered to McDermott Southeast Asia, Pte., Ltd., both of which are foreign corporations not conducting any business within the United States, although they are wholly owned subsidiaries of McDermott International Inc., and McDermott, Inc. (both U.S. corporations), respectively. After perceiving the correct posture of the parties, Schexnider moved to amend his complaint in order to name McDermott Australia, Ltd., and McDermott Southeast Asia, Pte., Ltd., as party defendants, but they were dismissed pursuant to Rule 4(j) of the Federal Rules of Civil Procedure.

II

On December 28, 1981, Schexnider filed his seaman's complaint against McDermott International, Inc., and McDermott, Inc., (McDermott) pursuant to the Merchant Ma-

rine Act of 1920, 46 U.S.C. § 688, better known as the Jones Act, and general maritime law. Schexnider alleged that he was injured in a slip and fall accident on April 12, 1981, while working on the DB. In its answer McDermott admitted ownership of the DB. On June 18, 1982, Schexnider filed an amended complaint to add his wife as a plaintiff.

Pretrial proceedings and discovery followed. A trial date was set on several occasions but in each instance the trial was postponed. In April 1986, the defendants moved to dismiss on choice-of-law and *forum non conveniens* grounds. This motion was granted by the district court in an opinion dated June 23. The court found that Australian law governed the case, and dismissed the case as to the remaining defendants, conditioned upon the defendants agreeing to submit to the jurisdiction of Australian courts and its service of process within sixty days of the date of the order, agreeing to waive all statute-of-limitations and laches defenses, agreeing to satisfy any judgment rendered by the Australian courts, and agreeing that any and all depositions taken in the present matter would be admissible as evidence in the Australian courts.

By pleading of July 7, 1986, McDermott, Inc., McDermott International, Inc. and INA agreed to the terms and conditions specified in the judgment. Schexnider filed a motion to stay and a notice of appeal on July 17.

### III

■ Resolution of this appeal requires us to determine whether the district court abused its discretion by dismissing Schexnider's suit on *forum non conveniens* grounds. First the court determines that United States law does not apply, and then the court balances public and private convenience factors set forth in judicial precedent to determine whether to dismiss the case. While the district court's choice-of-law determination is subject to *de novo* review by the court of appeals, *Bailey v. Dolphin International, Inc.*, 697 F.2d 1268, 1274 (5th Cir.1983), the *forum non*

*conveniens* determination (i.e., the balancing of public and private factors) is committed to the sound discretion of the district court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981). We may reverse a district court's decision on a motion to dismiss based on *forum non conveniens* only if its action constitutes a clear abuse of discretion. *Piper*, 454 U.S. at 257, 102 S.Ct. at 266–67; *Bailey*, 697 F.2d at 1274.

■ The district court correctly determined that Australian law applied to Schexnider's suit. The determination of the law governing this maritime action is made pursuant to a multifactored analysis set out in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and further elaborated in *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970) (these factors have become known as the *Lauritzen-Rhoditis* factors). They are:

1. the place of the wrongful act;
2. the law of the flag;
3. the allegiance or domicile of the injured seaman;
4. the allegiance of the defendant shipowner;
5. the place where the contract was made;
6. the accessibility of the foreign forum;
7. the law of the forum;
8. the base of operations.

*See Rhoditis*, 398 U.S. at 308–09, 90 S.Ct. at 1733–34. The significance of these factors must be considered in the light of the national interest to be served by assertion of Jones Act jurisdiction. *Id.* at 309, 90 S.Ct. at 1734. In this case, the district court concluded that the application of these factors weighed in favor of applying Australian law. While the court found that the domicile of the injured party was in the United States, and his employment contract was made in the United States, the other factors favored applying Australian law. The district court found that the ship on which the accident occurred flew the Australian flag, the allegiance of the defendant

shipowner was Australian, Australian courts were accessible to provide relief, Australian law was presumed adequate since the plaintiff had not shown otherwise, and the shipowner's base of operations was abroad. The district court also found that the ship was never intended to and never did sail in American waters, and that while the plaintiff did sign on for work in this country, the employment contract specifically provided that employment was for the "Southeast Asia area."

Of particular significance in this case is the fact that the ship on which Schexnider was injured flew the Australian flag. The law of the flag is given *great* weight in determining the law to be applied in maritime cases. As the Supreme Court has held, the law of the flag is "the most venerable and universal rule of maritime law," which "overbears most other connecting events in determining applicable law ... unless some heavy counterweight appears." *Lauritzen*, 345 U.S. at 584, 73 S.Ct. at 929. The district court found that under the facts of this case, heavy counterweights which favored applying American law did not exist. We agree.

Furthermore, a related consideration is that the DB was built in Australia, and in accordance with Australian standards. This clearly favors the application of Australian law since part of Schexnider's unseaworthiness claim relates to the way in which the staircase was built on the DB. In addition, the district court presumed, without challenge, that the Australian courts would be available and adequate for the litigation of this case. The principal factor favoring the application of American law is the fact that Schexnider is a United States citizen. But this is not sufficient to outweigh the factors favoring the application of Australian law, especially the law of the flag. Schexnider also argues that the fact that the ultimate parent corporation (the DB is owned by a subsidiary of a subsidiary), McDermott, Inc., is an American corporation, militates in favor of applying American law. But we do not regard as significant the fact that McDermott, Inc. is an American corporation given the fact that the day-to-day operations of the vessel were, according to the district court, controlled by McDermott's Southeast Asian and Australian subsidiaries.

The preponderance of the *Lauritzen-Rhoditis* factors clearly favors the application of Australian law. First, and perhaps most important, the law of the flag is Australian. Furthermore, the DB was built in Australia according to Australian standards, the day-to-day operations of the DB were governed in part by an Australian subsidiary of McDermott, and Australian courts and law are available to provide relief. By way of contrast only the fact that Schexnider is a United States citizen clearly favors the application of American law. Given the heavy balance in favor of applying Australian law, we agree with the district court that Australian law governs Schexnider's lawsuit.

## IV

We do, however, find that the district court abused its discretion when it dismissed Schexnider's suit on *forum non conveniens* grounds. The determination whether an action should be dismissed on *forum non conveniens* grounds involves a balancing of public and private interest factors as set out by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947):

An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility [sic] of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not

necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

330 U.S. at 508–509, 67 S.Ct. at 843.

■ Although it is true that an appellate court may reverse a district court's *forum non conveniens* determination only where there has been a clear abuse of the district court's discretion, *Piper*, 454 U.S. at 257, 102 S.Ct. at 266–67, it is also true that there is ordinarily a strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum. *Id.* at 255, 102 S.Ct. at 265–66.[1] In this case the private and public interest factors do not point clearly toward trial in Australia.

Trial in Lake Charles, Louisiana, is clearly convenient for the plaintiff, who is a citizen and resident, especially when many of the plaintiff's witnesses are also in this country. Moreover, a trial in Australia would in all likelihood be a hardship to Schexnider who is apparently not in good health. By way of contrast, the appellees have not shown that a trial in Lake Charles would greatly inconvenience them. From the record, we observe that the appellees were apparently ready and able to have their case tried in Lake Charles. At least in a few instances, the trial date in this case was reset on Schexnider's motion, not the appellees'. We thus conclude that the private interest factors clearly point in favor of having this case tried in the United States.

The district court concluded that factors of public interest favored trial in Australia. The district court cited "Gramm-Rudman" problems (federal court budgetary difficulties) and the lack of local interest in this type of case. The Gramm-Rudman emergency, as it relates to funding of federal trials, has subsided. Lack of public interest in Schexnider's case would constitute a weightier objection if the litigation of this case were still in its preliminary stages. But extensive pretrial discovery and proceedings have already taken place over a period of some five years. A trial date has been set several times. Given the extensive nature of the pretrial preparation, a trial in Lake Charles would not burden the district court significantly more than it has already been burdened. Although the local community will be inconvenienced by being pressed into jury duty, the imposition of jury duty is mitigated by the considerations that Schexnider is a citizen of the community and that the trial is not likely to be lengthy.

■ The district court's principal objection to trying this case in the United States was the difficulty that would be involved in applying Australian law. Although this certainly is a factor weighing in favor of trying the case in Australia, the need to apply foreign law is not in itself reason to apply the doctrine of *forum non conve-*

---

1. Schexnider makes much of the fact that he is an American citizen. A citizen's forum choice should not be given dispositive weight, however. *Piper*, 454 U.S. at 256 n. 23, 102 S.Ct. at 266 n. 23. This court has held that a court does not abuse its discretion by not heavily weighting this factor. *Pacific Employees Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 806 (5th Cir. 1985).

*niens. Piper*, 454 U.S. at 260 n. 29, 102 S.Ct. at 268 n. 29; *Manu Intern. S.A. v. Avon Products, Inc.*, 641 F.2d 62, 63 (2d Cir.1981). As the Second Circuit noted in *Manu:* "We must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." 641 F.2d at 68.

Because the factors pointing against the strong presumption in favor of the plaintiff's choice of forum in this case are slight, we conclude that the district court abused its discretion by dismissing Schexnider's suit.

### V

For the reasons discussed in this opinion, we affirm the district court's determination that Australian law applies in this case. However, we also reverse the district court's dismissal of Schexnider's suit against the appellees. This case is therefore remanded to the district court with instructions to retain jurisdiction and to apply Australian law to Schexnider's maritime claim.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.