920 F.2d 278
 Vernon Isaiah FOGLEMAN and Jean Kenanin Fogleman,
Plaintiffs-Appellants Cross-Appellees,
v.
ARAMCO (ARABIAN AMERICAN OIL COMPANY), Fluor Corporation, et
al., Defendants-Appellees Cross-Appellants.
Vernon Isaiah FOGLEMAN and
Jean Kenanin Fogleman,
Plaintiffs-Appellants,
v.
ARAMCO, Fluor Corporation, Fluor
Constructions, Inc., and Fluor
Arabia, Limited, Defendants-Appellees.
 Nos. 89-2995, 90-2144.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 4, 1991.
 
 Gregg L. Spyridon, Paul D. Palermo, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, La., for plaintiffs-appellants, cross-appellees.
 Gavin H. McInnis, Antoinette Van Heugten, Haight, Gardner, Poor & Havens, Houston, Tex., for ARAMCO.
 Marilyn T. Hebinck, Royston, Rayzor, Vickery & Williams, Houston, Tex., for Fluor Corp., Fluor Constr. & Fluor Arabia, Ltd.
 Appeals from the United States District Court for the Southern District of Texas.
 Before RUBIN, GARWOOD and HIGGINBOTHAM, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 The district court correctly decided that Saudi Arabian law applies in a suit for personal injuries sustained on an oil platform off the coast of Saudi Arabia by an United States domiciliary, employed by a Saudi Arabian subsidiary of an United States corporation to work in Saudi Arabia, because all relevant contacts except the domicile of the employee point to Saudi Arabia. We remand to the district court, however, for recalculation of taxable costs.
 
 I.
 
 2
 Fluor Corporation is a Delaware corporation with its principal place of business in California. Among its more than 300 subsidiaries is Fluor Engineers, Inc., later renamed Fluor Daniel, Inc., which is incorporated and has its principal place of business in California. Fluor Daniel owned 70% of Fluor Arabia, Limited, a Saudi Arabian corporation with its principal place of business in Riyadh, Saudi Arabia. The remaining 30% of Fluor Arabia's shares were owned by E.A. Juffali & Bros., a Saudi Arabian general partnership. Fluor Arabia is authorized to do business only in Saudi Arabia.
 
 
 3
 Vernon I. Fogleman, a Louisiana resident, began to work for Fluor Arabia in Saudi Arabia as a construction and electrical supervisor in May 1976. To apply for his job, Fogleman had completed a "Foreign Employment Application" obtained in Louisiana from a neighbor's son on leave from another company in Saudi Arabia. After the neighbor's son had returned to Saudi Arabia, Fogleman mailed the application to him. A few weeks later, Fogleman received a telephone call from Irvine, California, advising him of a job opening in Saudi Arabia. He therefore proceeded to Saudi Arabia, where, after signing a contract, he worked for Fluor Arabia until 1984 under a series of eight one-year contracts, all signed in Saudi Arabia. The contracts provided that Fogleman had been hired to work exclusively in Saudi Arabia. They contained no choice-of-law provision, but did provide that employee benefits for work-related injuries would be computed on the basis of the California Worker's Compensation Act.
 
 
 4
 For three years Fogleman worked directly for Fluor Arabia on construction projects for the Arabian American Oil Company (ARAMCO). During the following five years, Fluor Arabia assigned Fogleman to work with ARAMCO as an electrical and construction supervisor pursuant to a "Supplementary Manpower Contract" between the two companies. His final assignment, beginning in June 1983, was to supervise the electrification of an ARAMCO oil platform in the Berri Field, off the coast of Saudi Arabia in the Persian Gulf. During the course of this work Fogleman ate, slept, and maintained an office aboard the workboat M/V AL JUBAIL I. Beginning in August 1983, ARAMCO required Fogleman to work 84 hours per week because the project was behind schedule. On January 24, 1984, while using a swing rope to transfer from the platform to the workboat AL MOJIL VIII, Fogleman sustained a sharp pain in his chest. He was taken to the Abdulla Fouad Hospital for medical treatment, where, upon completion of a stress test, he suffered a heart attack. He was then evacuated on an ARAMCO charter plane to Houston, Texas, where he underwent triple bypass surgery.
 
 
 5
 Invoking the Jones Act[1] and general maritime law, Fogleman and his wife filed suit against ARAMCO, Fluor Arabia, and other Fluor-related companies, alleging that excessive work demands and inadequate medical treatment had permanently disabled him. After a hearing, the magistrate to whom the district court referred the case recommended that: Fluor Arabia be dismissed due to improper service; other Fluor-related corporations be dismissed; ARAMCO's motions for summary judgment be denied; and the Labor Law of Saudi Arabia be applied in the suit against ARAMCO and Fluor Corporation. The district court adopted the magistrate's recommendations. The parties then filed a stipulation that under the Labor Law of Saudi Arabia, the plaintiffs would not be entitled to any further relief or damages arising from Fogleman's disability. This stipulation contained no reservation of a possible claim against Fluor Arabia under the provision in its contract relating to the California Worker's Compensation Act. The court then entered a final judgment against the Foglemans. A determination by this court that Saudi Arabian law governs this suit would therefore bar any claims against ARAMCO and Fluor Corporation the Foglemans might have pursued under the Jones Act, general maritime law, or the California Worker's Compensation Act.
 
 II.
 
 6
 We review de novo a district court's choice-of-law determination.[2] Whether federal maritime law or foreign law should govern a maritime tort depends on an assessment of eight factors articulated by the Supreme Court in Lauritzen v. Larsen[3] and Hellenic Lines, Ltd. v. Rhoditis.[4] These factors are: 1) the place of the wrongful act; 2) the law of the flag; 3) the allegiance or domicile of the injured worker; 4) the allegiance of the defendant shipowner; 5) the place of the contract; 6) the inaccessibility of the foreign forum; 7) the law of the forum; and 8) the shipowner's base of operations.[5] The test is not a mechanical one in which the court simply counts the relevant contacts; instead, the significance of each factor must be considered within the particular context of the claim and the national interest that might be served by the application of United States law, particularly the Jones Act.[6] Moreover, the significance of each factor in a nontraditional maritime context like offshore oil production may vary from that in the traditional shipping context in which the Lauritzen-Rhoditis test arose.[7]
 
 1) Place of the Wrongful Act
 
 7
 The place of the wrongful act is accorded little weight in traditional maritime cases, in which the locality of the ship changes constantly.[8] When the injury stems from work on a permanently situated offshore oil rig or work platform, however, the place of the wrong assumes greater importance.[9] Fogleman was injured while transferring from a permanent oil platform to a workboat off the coast of Saudi Arabia.
 
 2) Law of the Flag
 
 8
 The law of the flag has traditionally been of cardinal importance in determining the law applicable to maritime cases.[10] The vessels on which Fogleman worked and lived, the AL MOJIL VIII and the AL JUBAIL I, sailed under the flags of Panama and Saudi Arabia respectively.
 
 3) Allegiance or Domicile of the Injured
 
 9
 At all relevant times, Fogleman was domiciled in the United States.
 
 4) Allegiance of the Defendant Shipowner
 
 10
 Both the AL JUBAIL I and the AL MOJIL VIII are owned by the Al-Mojil Establishment of Dammam, Saudi Arabia. Since this is not a traditional shipping case, however, Fogleman's alleged employers--and therefore the defendants in this case--are Fluor Arabia and ARAMCO, rather than the shipowners. Fluor Arabia is a Saudi Arabian corporation with its principal place of business in Riyadh, Saudi Arabia. Although previously headquartered in Houston, Texas, ARAMCO is a Delaware corporation with its principal place of business in Dhahran, Saudi Arabia. ARAMCO maintains an office in Washington, D.C. but transacts no business in the United States. In 1980, the Saudi Arabian government acquired beneficial title to ARAMCO's assets.[11]
 
 5) Place of Contract
 
 11
 The place of the contract, of little import due to its "fortuitous" occurrence for the traditional seaman,[12] becomes a substantial factor in nontraditional maritime employment aboard a vessel more or less permanently located off the coast of a particular country.[13] Fogleman signed all of his eight successive contracts in Saudi Arabia.
 
 6) Inaccessibility of the Foreign Forum
 
 12
 As the Supreme Court noted in Lauritzen, this factor is relevant only to a forum non conveniens determination, not to a choice-of-law analysis.[14]
 
 7) Law of the Forum
 
 13
 In Lauritzen, the Supreme Court rejected the argument that an American forum should simply apply its own law to a maritime tort, since this would in effect reduce the choice-of-law determination to no more than a personal jurisdiction inquiry.[15] While the law of the forum factor is therefore given little weight in determining choice of law,[16] we are nevertheless obliged to correct the district court's misapprehension that this factor requires an evaluation of the adequacy of the foreign forum's law. Although we can attribute the district court's misunderstanding to ambiguity in one of our previous opinions,[17] the law-of-the-forum factor in the Lauritzen analysis is patently United States, rather than foreign, law.
 
 
 14
 Nor is the law of the forum automatically "inapplicable when [the] defendant was involuntarily made a party,"[18] as some of our previous opinions have stated in dicta. We originally made this statement in the context of assessing personal jurisdiction.[19] It was subsequently inadvertently transposed to the choice-of-law context.[20] Very rarely, after all, is a defendant a voluntary party to any action against him, unless the suit is an attempt to validate a compromise.
 
 
 15
 The Foglemans brought their suit in federal district court. Whatever weight the law-of-the-forum factor has, therefore, tells on the side of the application of United States law.
 
 8) Base of Operations
 
 16
 In Rhoditis, the Supreme Court determined United States law to be applicable to a suit by an alien seaman against an alien corporation for injury sustained on a foreign ship, because the corporate shipowner maintained "substantial and continuing contacts"[21] with the United States: the United States was the site of the corporation's principal place of business; a United States domiciliary owned 95% of the corporation's stock; and the ship made regularly scheduled trips to the United States.[22] The Court therefore determined that, despite its corporate facade, the shipowner's base of operations was in the United States.[23]
 
 
 17
 The Foglemans contend that, if one looks behind the corporate facade of Fluor Arabia and ARAMCO, the base of operations of both companies is in the United States; both companies maintain substantial and continuing contacts with the United States through their corporate parents; and United States law is therefore applicable to this case. This court has, however, uniformly held that to determine a vessel's base of operations for choice of law purposes, we look to the location from which its day-to-day operations are controlled.[24] Particularly when nontraditional maritime activities with relatively permanently based vessels are involved, "it is the base from which the rig is operated on a day-to-day basis rather than the base of operations of the corporate or ultimate owner of the rig which is important for choice of law purposes."[25] We look to the location of day-to-day operations even when the employer is a wholly-owned subsidiary of an American corporation, so long as the foreign subsidiary was not formed specifically to evade obligations of the parent corporation under American law.[26] Both ARAMCO and Fluor Arabia conduct all of their business in Saudi Arabia. Their principal places of business are located in Saudi Arabia. There is no evidence that the work boats involved in Fogleman's injury ever worked outside Saudi Arabian waters and there is evidence that they have never travelled to the United States. The district court found, with ample support from the record, that the day-to-day operations of both ARAMCO and Fluor Arabia in the construction and electrification of ARAMCO's offshore oil platforms were conducted in Saudi Arabia. No evidence was adduced that either Fluor Arabia or ARAMCO were created to evade obligations under United States law.[27] We therefore conclude that the base of operations factor suggests the application of Saudi Arabian law.
 
 
 18
 Analysis of the facts of this case according to the Lauritzen-Rhoditis test demonstrates that the only significant factor pointing to the application of United States law is the domicile of the plaintiff. We have previously held that the allegiance of a plaintiff, even when recruited in the United States, does not mandate the application of United States law in a maritime suit when all the other factors indicate the application of foreign law.[28]
 
 
 19
 The Foglemans also contend that the remedy available to them under Saudi Arabian law is inadequate on its face and that the application of United States law to this suit is therefore required. The fact that the law of another forum may be more or less favorable to a plaintiff, however, does not determine choice of law.[29] Moreover, this court has previously mandated the application of the Labor Law of Saudi Arabia to proceedings in the United States.[30]
 
 
 20
 We conclude that the district court correctly applied the Lauritzen-Rhoditis test and that the law of Saudi Arabia governs this suit. We do not address the Foglemans' contention that the district court should have held that Fluor Arabia was properly served because: 1) the parties have stipulated that applying Saudi Arabian law disposes of all claims arising from Fogleman's injury, so that even if Fluor Arabia were still a party, this would dispose of any delictual claims against it; and 2) Fogleman has not asserted any contractual claim against Fluor Arabia arising out of the California-law provision of his contract.
 
 III.
 
 21
 The Foglemans contend that ARAMCO's bill of costs is excessive. We will reverse the district court's award of costs only on a clear showing of abuse of discretion.[31]
 
 
 22
 In the present case, we must correct an obvious discrepancy between the award made by the district court and the requested reimbursement. The district court taxed the Foglemans $5,765.62 in costs. ARAMCO, however, originally requested only $5,165.62; subsequently, in its response to the plaintiffs' memorandum in opposition, ARAMCO reduced its request to $4,924.32. ARAMCO does not contest a reduction of the district court's award of costs to its requested amount. We therefore find that the award of costs to ARAMCO should be reduced by $841.30, to reflect the difference between the amount actually requested and that awarded.
 
 
 23
 The Foglemans challenge the inclusion of charges relating to the deposition of Vernon Fogleman in ARAMCO's bill of costs, asserting that ARAMCO used the deposition only in its brief to support its motion for summary judgment on the issue of Fogleman's status as a Jones Act seaman. Since the district court denied this motion, the Foglemans contend that ARAMCO was not the prevailing party in regard to the costs incurred in taking Fogleman's deposition. This argument is without merit. The case must be viewed as a whole to determine who was the "prevailing party"; a party need not prevail on every issue in order to be entitled to costs.[32]
 
 
 24
 The Foglemans also contend that the costs incurred by ARAMCO in taking the deposition of Ms. Fogleman, and in copying the depositions of the Foglemans and of Dr. Jorge Garcia, should have been disallowed. This court has previously held that prevailing parties are entitled to recover the costs of original depositions and copies under 28 U.S.C. Sec. 1920(2) and Sec. 1920(4) respectively,[33] provided they were "necessarily obtained for use in the case."[34] Although some courts have disagreed,[35] we have consistently held that a deposition need not be introduced into evidence at trial in order to be "necessarily obtained for use in the case." If, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery, it may be included in the costs of the prevailing party.[36] Similarly, a deposition copy obtained for use during trial or for trial preparation, rather than for the mere convenience of counsel, may be included in taxable costs.[37] Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court.[38] We accord the district court great latitude in this determination.[39] The district court, by adopting the reasons set forth in ARAMCO's response to the Foglemans' opposing motion, implicitly found that ARAMCO had fulfilled its burden of justifying the necessity of obtaining the depositions and copies at issue.
 
 
 25
 ARAMCO offers no explanation, however, why it was necessary to obtain a copy of Fogleman's deposition at a "semi-expedited" rate. We have previously held that the extra cost of obtaining a trial transcript on an expedited basis is not taxable unless prior court approval of expedition has been obtained or the special character of the litigation necessitates expedited receipt of the transcript.[40] The same reasoning applies to a copy of a deposition obtained on an expedited basis. ARAMCO had more than two years in which to take Fogleman's deposition, but failed to do so until litigation deadlines were at hand. ARAMCO offers no justification for its actions. Additional charges incurred merely for the convenience of one party's counsel should not be taxed to the other. We therefore remand this issue to the district court, to determine whether obtaining Fogleman's deposition on a semi-expedited basis was necessary. If not, the district court should reduce the taxable costs for this deposition to whatever the charge would have been on a non-expedited basis.
 
 
 26
 Lastly, the Foglemans contend that ARAMCO's bill of $2,419.12 for reproduction costs is excessive. The cost of copying other documents is subject to the same standard as that of copying depositions: reproductions necessarily obtained for use in the case are included within taxable costs,[41] provided that the prevailing party demonstrates that necessity.[42] ARAMCO has provided no itemized breakdown of the copying costs incurred, beyond distinguishing those duplicated in house by its counsel and those duplicated elsewhere. It is therefore impossible to tell to what extent copies charged to ARAMCO were necessarily obtained for use in the case rather than obtained simply for the convenience of counsel. While we certainly do not expect a prevailing party to identify every xerox copy made for use in the course of legal proceedings, we do require some demonstration that reproduction costs necessarily result from that litigation. The Foglemans should be taxed for the cost of reproducing relevant documents and exhibits for use in the case, but should not be held responsible for multiple copies of documents, attorney correspondence, or any of the other multitude of papers that may pass through a law firm's xerox machines. We therefore remand to the district court to determine whether the reproduction costs claimed were necessarily incurred.
 
 
 27
 ARAMCO's counsel charged 20 cents per copy for duplications of documents made in house. The Foglemans contend that they should be taxed only for the actual cost of reproduction. To the extent that counsel charges a party more than actual cost for any service, be it reproduction of documents or telephone calls, counsel is recovering additional fees. In Wolfe v. Wolfe,[43] the district court reduced the charge of 25 cents per copy claimed by the prevailing party's law firm to 10 cents per copy.[44] While we do not prescribe that the district court adopt the same figure, we remand for determination of an accurate reflection of the actual cost to the law firm of making these copies or the cost of obtaining copies on the open market, if that is higher or if it is difficult to compute "actual cost" accurately and inexpensively.
 
 
 28
 To summarize, we affirm the award by the district court of costs for the originals and copies of depositions of the Foglemans and Dr. Jorge Garcia. We remand for reduction of costs by $841.30 to the amount actually requested by ARAMCO, for reduction of Vernon Fogleman's deposition charges to the non-expedited rate, for reconsideration of in-house copying charges, and for determination of the extent to which ARAMCO's general reproduction costs were necessarily incurred for use in the case.
 
 
 29
 The district court's decision that the Labor Law of Saudi Arabia governs this case is AFFIRMED. The district court's award of costs to ARAMCO is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 46 U.S.C. Sec. 688 (1988)
 
 
 [2]
 Quintero v. Klaveness Ship Lines, 914 F.2d 717 (5th Cir.1990); Schexnider v. McDermott Int'l, Inc., 817 F.2d 1159 (5th Cir.), cert. denied 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987)
 
 
 [3]
 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953)
 
 
 [4]
 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970)
 
 
 [5]
 Lauritzen, 345 U.S. at 583-92, 73 S.Ct. at 928-33; Rhoditis, 398 U.S. at 309, 90 S.Ct. at 1734
 
 
 [6]
 Rhoditis, 398 U.S. at 308-09, 90 S.Ct. at 1734
 
 
 [7]
 Chiazor v. Transworld Drilling Co., 648 F.2d 1015, 1018 (5th Cir.1981), cert. denied 455 U.S. 1019, 102 S.Ct. 1714, 72 L.Ed.2d 136 (1982), overruled on other grounds In re Air Crash Disaster near New Orleans, 821 F.2d 1147 (5th Cir. 1987) (en banc); Bailey v. Dolphin Int'l, Inc., 697 F.2d 1268, 1275 (5th Cir.1983), overruled on other grounds Air Crash Disaster, 821 F.2d at 1147; Vaz Borralho v. Keydril Co., 696 F.2d 379, 388 (5th Cir.1983), overruled on other grounds Air Crash Disaster, 821 F.2d at 1147
 
 
 [8]
 Lauritzen, 345 U.S. at 583-84, 73 S.Ct. at 929; Quintero, 914 F.2d at 722
 
 
 [9]
 Chiazor, 648 F.2d at 1019; Bailey, 697 F.2d at 1275 (5th Cir.1983)
 
 
 [10]
 Lauritzen, 345 U.S. at 585, 73 S.Ct. at 929-30; Schexnider, 817 F.2d at 1162
 
 
 [11]
 See Randall v. Arabian American Oil Co., 778 F.2d 1146, 1148 (5th Cir.1985); Chadwick v. Arabian American Oil Co., 656 F.Supp. 857, 858-59 (D. Del.1987)
 
 
 [12]
 Lauritzen, 345 U.S. at 589, 73 S.Ct. at 932
 
 
 [13]
 Chiazor, 648 F.2d at 1019; Bailey, 697 F.2d at 1277
 
 
 [14]
 Lauritzen, 345 U.S. at 589-90, 73 S.Ct. at 932
 
 
 [15]
 Id. at 590-91, 73 S.Ct. at 932
 
 
 [16]
 Id
 
 
 [17]
 Schexnider, 817 F.2d at 1162
 
 
 [18]
 Diaz v. Humboldt, 722 F.2d 1216, 1218 (5th Cir.1984), overruled on other grounds Air Crash Disaster, 821 F.2d at 1147
 
 
 [19]
 Nunez-Lozano v. Rederi, 634 F.2d 135 (5th Cir.1980)
 
 
 [20]
 Diaz, 722 F.2d at 1218; Quintero, 914 F.2d at 723
 
 
 [21]
 398 U.S. at 310, 90 S.Ct. at 1734
 
 
 [22]
 Id
 
 
 [23]
 Id
 
 
 [24]
 Quintero, 914 F.2d at 723; Diaz, 722 F.2d at 1218
 
 
 [25]
 Bailey, 697 F.2d at 1275, n. 22. See Schexnider, 817 F.2d at 1162; Chiazor, 648 F.2d at 1019; Vaz Borralho, 696 F.2d at 388
 
 
 [26]
 Vaz Borralho, 696 F.2d at 388-89
 
 
 [27]
 See id
 
 
 [28]
 Schexnider, 817 F.2d at 1162
 
 
 [29]
 Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)
 
 
 [30]
 Randall, 778 F.2d at 1150
 
 
 [31]
 Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., 854 F.2d 799, 801-02 (5th Cir.1988)
 
 
 [32]
 Studiengesellschaft Kohle mbH v. Eastman Kodak Co., 713 F.2d 128, 131 (5th Cir.1983); United States v. Mitchell, 580 F.2d 789, 793 (5th Cir.1978)
 
 
 [33]
 28 U.S.C. Sec. 1920 reads as follows:
 A judge or clerk of any court of the United States may tax as costs the following:
 ... (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
 ... (4) Fees for exemplification and copies of papers necessarily obtained for use in the case ...
 
 
 [34]
 United States v. Kolesar, 313 F.2d 835, 838-840 (5th Cir.1963); West Wind Africa Line, Ltd. v. Corpus Christi Marine Services Co., 834 F.2d 1232, 1237-38 (5th Cir.1988)
 
 
 [35]
 E.g., Todd Shipyards Corp. v. Turbine Service, Inc., 592 F.Supp. 380, 401 (E.D.La.1984); Morris v. Carnathan, 63 F.R.D. 374, 380-81 (N.D.Miss.1974)
 
 
 [36]
 West Wind Africa, 834 F.2d at 1237-38; Nissho-Iwai Co. v. Occidental Crude Sales, Inc., 729 F.2d 1530, 1553 (5th Cir.1984); Allen v. United States Steel Corp., 665 F.2d 689, 697 (5th Cir.1982); Copper Liquor, Inc. v. Adolph Coors Co., 684 F.2d 1087 (5th Cir.1982), reinstated in relevant part en banc 701 F.2d 542 (1983); Carpa, Inc. v. Ward Foods, Inc., 567 F.2d 1316, 1323 (5th Cir.1978), overruled on other grounds, Copper Liquor, 701 F.2d at 542; Kolesar, 313 F.2d at 840
 
 
 [37]
 Studiengesellschaft, 713 F.2d at 134; Carpa, 567 F.2d at 1323; Kolesar, 313 F.2d at 835; Christian v. Tackett, 86 F.R.D. 220, 222 (N.D.Miss.1979)
 
 
 [38]
 Allen, 665 F.2d at 697; Carpa, 567 F.2d at 1323; Kolesar, 313 F.2d at 835
 
 
 [39]
 Newman v. A.E. Staley Mfg. Co., 648 F.2d 330, 337 (5th Cir.1981); In re Nissan Antitrust Litigation, 577 F.2d 910, 918 (5th Cir.1978), cert. denied 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1979)
 
 
 [40]
 J.T. Gibbons, Inc. v. Crawford Fitting Co., 760 F.2d 613, 615-16 (5th Cir.1985), reinstated in relevant part en banc, 790 F.2d 1193 (1986), aff'd 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987); Studiengesellschaft, 713 F.2d at 133; Brumley Estate v. Iowa Beef Processors, Inc., 704 F.2d 1362, 1363 (5th Cir.1983); In re Nissan, 577 F.2d at 918
 
 
 [41]
 Nissho-Iwai, 729 F.2d at 1553; Scroggins v. Air Cargo, Inc., 534 F.2d 1124, 1133 (5th Cir.1976)
 
 
 [42]
 American Key Corp. v. Cumberland Associates, 102 F.R.D. 496, 499 (N.D.Ga.1984)
 
 
 [43]
 570 F.Supp. 826 (D.S.C.1983)
 
 
 [44]
 Id. at 828