**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NANCY C. CHERRY,
Plaintiff-Appellee,

v.

CHAMPION INTERNATIONAL

No. 98-1618

CORPORATION,
Defendant-Appellant.

EQUAL EMPLOYMENT ADVISORY
COUNCIL,
Amicus Curiae.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Max O. Cogburn, Magistrate Judge.
(CA-97-145-1-C)

Argued: March 1, 1999

Decided: July 27, 1999

Before NIEMEYER and KING, Circuit Judges,
and LEE, United States District Judge
for the Eastern District of Virginia, sitting by designation.

_____

Reversed and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge King and Judge Lee joined.

_____

**COUNSEL**

**ARGUED:** David Edward Gevertz, PAUL, HASTINGS, JANOF-
SKY & WALKER, L.L.P., Atlanta, Georgia, for Appellant. George

Benjamin Hyler, Jr., HYLER, LOPEZ & WALTON, Asheville, North Carolina, for Appellee. **ON BRIEF:** R. Lawrence Ashe, Jr., PAUL, HASTINGS, JANOFSKY & WALKER, L.L.P., Atlanta, Georgia, for Appellant. Michele M. Walton, HYLER, LOPEZ & WALTON, Asheville, North Carolina, for Appellee. Ann Elizabeth Reesman, Corrie L. Fischel, MCGUINESS & WILLIAMS, Washington, D.C., for Amicus Curiae.

_____

**OPINION**

NIEMEYER, Circuit Judge:

The district court denied Champion International Corporation, the prevailing defendant in this Title VII action, the costs ordinarily awardable to prevailing parties under Federal Rule of Civil Procedure 54(d)(1) because of the plaintiff's "good faith, modest means, comparative lack of economic power, and the important public interest served by encouraging others in similar circumstances to pursue colorable Title VII claims." Champion appeals, challenging these grounds as improper ones for exercising discretion to deny it costs as the prevailing party. For the reasons that follow, we reverse and remand.

I

Nancy Cherry, who worked in the lumber yard at Champion's pulp mill in Canton, North Carolina, filed this Title VII action against Champion in May 1997, alleging that she had been the victim of eight incidents of sexual harassment over a period of seven years. Cherry also alleged that Champion intentionally inflicted emotional distress upon her in violation of North Carolina common law.

On Champion's motion for summary judgment, the district court found that only a claim based on the most recent incident, which occurred in July 1995, was not time-barred. That incident involved one of Cherry's male coworkers admonishing her to "get her butt back" to a different work location and telling her she was trying "to run everyone else's business except her own," and another male

2

coworker quipping, "Why don't you just bid out from down here? You need to find a job that's for women. This is no place for you in the Wood Yard." The district court granted Champion's summary judgment motion on this incident because Champion promptly and thoroughly responded to Cherry's complaint; Champion "did everything within its power to stop the conduct plaintiff found offensive and to provide her with other employment opportunities." On the state law claim, the court determined that Cherry had failed to produce evidence demonstrating either that the incident involved outrageous conduct or that it caused her severe emotional injury. In entering summary judgment for Champion, the court ruled that "[h]aving found that plaintiff pursued her claims in good faith, the parties shall bear their own costs in this action."

Challenging the district court's taxation of costs, Champion filed a motion pursuant to Federal Rule of Civil Procedure 54(d)(1), requesting the court to reconsider that portion of its judgment requiring the parties to bear their own costs and instead to award costs to Champion. Champion had incurred $3,556 in costs, consisting of $2,353 to transcribe depositions, including the deposition of Cherry; $1,082 to videotape Cherry's deposition; and $121 in copying costs.

Following a hearing, the district court denied Champion's motion, citing Cherry's "good faith [in bringing the action], modest means, comparative lack of economic power, and the important public interest served by encouraging others in similar circumstances to pursue colorable Title VII claims." The court acknowledged that in 1996, Cherry and her husband filed a joint income tax return, reporting $104,000 in income, and in 1997, when Cherry was not working, she stated that her husband earned approximately $70,000. Also, when Cherry chose not to return to work after having been given a leave of absence, she collected approximately $30,000 from her 401(k) savings plan and spent it on a truck and on motorcycles. The court noted, however, that no evidence was presented that Cherry was currently employed, and she testified that she had no assets independent of assets jointly owned with her husband, which included a house. The court concluded:

> In the case at hand, the only argument that plaintiff can afford to pay defendant's costs is that her husband earns a

3

good living. While it is one thing for a potential litigant to weigh the risks of losing personal assets or income before filing a claim, it would be a formidable barrier to require a person who believes, in good faith, that she has been discriminated against in her workplace to put at jeopardy the resources of her family. Indeed, it would run contrary to one's natural instincts. Adding to the calculus is the disparity in economic resources of the litigants from a person who earns nothing to a corporation that earns millions.

In denying Champion's motion for costs, the district court noted that even were it to grant Champion's motion, it would be necessary, pursuant to 28 U.S.C. § 1920(2), "to reduce any [such] award of costs by the cost of the stenographic transcription" of Cherry's deposition because it had also been videotaped.

On appeal, Champion argues that the district court ignored the presumption of an entitlement to the recovery of costs that Rule 54(d)(1) affords the prevailing party by requiring Champion to demonstrate why the presumption should be given effect, rather than requiring Cherry to demonstrate why the presumption should not be given effect. On the substantive application of the rule, Champion asserts that the district court (1) effectively created a "dependent-spouse" exception to Rule 54(d)(1) by considering only Cherry's individual assets in determining her ability to satisfy Champion's bill of costs, and (2) impermissibly compared the parties' wealth in denying its motion. Finally, Champion argues that the district court erred in concluding alternatively that 28 U.S.C. § 1920(2) precludes a prevailing defendant from recovering both stenographic and videotaping deposition costs.

II

Rule 54, entitled "Costs Other than Attorneys' Fees," provides in pertinent part:

> Except when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.

4

Fed. R. Civ. P. 54(d)(1). By mandating that, subject to court intervention, costs be allowed to a prevailing party "as of course," the rule creates the presumption that costs are to be awarded to the prevailing party. See Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981); Teague v. Bakker, 35 F.3d 978, 995-96 (4th Cir. 1994) (citations omitted). To overcome the presumption, a district court "must justify its decision [to deny costs] by `articulating some good reason for doing so.'" Teague, 35 F.3d at 996 (quoting Oak Hall Cap and Gown Co. v. Old Dominion Freight Line, Inc., 899 F.2d 291, 296 (4th Cir. 1990)). Costs may be denied to the prevailing party only when there would be an element of injustice in a presumptive cost award. See Delta Air Lines, 450 U.S. at 355 n.14. Thus, while Rule 54(d)(1) intends the award of costs to the prevailing party as a matter of course, the district court is given discretion to deny the award, and we review such exercise of discretion for abuse. See Teague, 35 F.3d at 996.

As with any exercise of discretion by the district court, when it is within the bounds of the discretion conferred, we may not question it. But the definition of those bounds is a question of law, and when a court traverses them, it abuses its discretion. See Koon v. United States, 518 U.S. 81, 100 (1996) (stating that"[a] district court by definition abuses its discretion when it makes an error of law" (citation omitted)).

The discretion conferred by Rule 54(d)(1), while only defined in the rule as a general reservation, "unless the court otherwise directs," has been defined more specifically by courts: "only misconduct by the prevailing party worthy of a penalty . . . or the losing party's inability to pay will suffice to justify denying costs." Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co., 854 F.2d 219, 222 (7th Cir. 1988) (citations omitted); see also Schwarz v. Folloder, 767 F.2d 125, 131 (5th Cir. 1985) (describing the denial of costs as "in the nature of a penalty" (internal quotation marks and citation omitted)); Serna v. Manzano, 616 F.2d 1165, 1167 (10th Cir. 1980) (same). We have recognized additional factors to justify denying an award of costs, such as their excessiveness in a particular case, the limited value of the prevailing party's victory, or the closeness and difficulty of the issues decided. See Teague, 35 F.3d at 996. Although the losing party's good faith in pursuing an action is a "virtual prerequisite" to

5

receiving relief from the normal operation of Rule 54(d)(1), that party's good faith, standing alone, is an insufficient basis for refusing to assess costs against that party. See id. With these principles in hand, we turn to the district court's denial of costs in this case.

In denying Champion's motion for costs, the district court relied upon (1) Cherry's good faith; (2) her inability to pay costs because she was unemployed and all of her property was owned jointly with her husband; (3) her comparative lack of economic power in relation to a "corporation that earns millions"; and (4) the public interest in encouraging Title VII suits. We consider these in order.

On the district court's first ground, Cherry's good faith in bringing her lawsuit cannot entitle her to relief from the presumptive taxation of costs provided by Rule 54(d)(1). Were this to be a proper independent basis for denial of costs, it would "frustrate" the operation of Rule 54(d)(1) because the losing party in most cases has acted in good faith. See Teague, 35 F.3d at 996. Cherry's good faith, however, is a prerequisite for her claim to relief from the presumptive application of Rule 54(d)(1). Because nothing suggests that the district court clearly erred in finding that Cherry brought her suit in good faith, we can proceed to consider whether the district court adequately justified its intervention to alter the rule's presumption by reliance on the other grounds stated.

The court's second ground was based on Cherry's modest means: that she had no independent income and owned no property in her own name. These observations, however, do not address whether Cherry was of such modest means that it would be unjust or inequitable to enforce Rule 54(d)(1) against her. The income from which Cherry and her husband lived was between $70,000 and $100,000 per year, providing Cherry with sufficient money to satisfy her personal needs. In addition, when she received $30,000 from her 401(k) plan in 1996, she was able to spend it on discretionary items such as a truck and motorcycles. To provide relief to Cherry in this context would be inequitable. While Cherry has sufficient access to marital property to provide herself with money as needed to pay her normal expenses and to be able to spend all of her 401(k) money on discretionary items, she wishes to shield herself from obligations such as court costs by claiming that all her money is jointly held and therefore

6

is not available for the payment of costs. The district court erred in failing to recognize the inequity inherent in this position. Evaluated objectively, Cherry had the effective ability to satisfy Champion's bill of costs.

We also observe that any ruling exempting an unsuccessful plaintiff with Cherry's financial resources from satisfying court costs would create a perplexing exception to Rule 54(d), one unavailable to in forma pauperis plaintiffs proceeding under 28 U.S.C. § 1915. While a non-prisoner in forma pauperis plaintiff remains exempt from paying filing fees or providing security for costs, see 28 U.S.C. § 1915(a)(1), the in forma pauperis plaintiff nonetheless remains liable for paying the prevailing adversary's costs, see 28 U.S.C. § 1915(f)(1) (stating that when a party proceeds in forma pauperis, "[j]udgment may be rendered for costs at the conclusion of the suit or action as in other proceedings"). In Flint v. Haynes, 651 F.2d 970 (4th Cir. 1981), for instance, we held that "a district court is empowered to award costs even when it has previously granted a litigant the benefits" of in forma pauperis status. Id. at 972. We explained:

> [W]hen costs are assessed only in extreme or exceptional cases, those persons granted leave to proceed in forma pauperis have virtually nothing to lose and everything to gain, and the purpose of § 1915 -- equal access for the poor and the rich -- is distorted. Non-indigents who contemplate litigation are routinely forced to decide whether their claim is worth it. We see no reason to treat indigents differently in this respect.

Id. at 973 (internal quotation marks and citations omitted). We find nothing in Rule 54(d) supporting the counterintuitive notion that litigants with "modest means" should be treated more leniently than in forma pauperis litigants regarding assessments of costs.

We also find the district court's reliance on its third ground, the parties' comparative economic power, to be error. Such a factor would almost always favor an individual plaintiff such as Cherry over her employer defendant. Moreover, the plain language of Rule 54(d) does not contemplate a court basing awards on a comparison of the parties' financial strengths. To do so would not only undermine the

7

presumption that Rule 54(d)(1) creates in prevailing parties' favor, but it would also undermine the foundation of the legal system that justice is administered to all equally, regardless of wealth or status. See Flint, 651 F.2d at 973.

For its final ground, the district court refused to award Champion costs because to deny the presumption of Rule 54(d)(1) would serve the public interest by encouraging individuals to pursue Title VII actions. In taking the nature of the underlying litigation into account, the district court again misconstrued the rule. The language of Rule 54(d)(1) does not provide that the presumptive award of costs may be defeated because of the nature of the underlying litigation. On the contrary, it provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules," the cost-shifting to the prevailing party otherwise applies to all cases, including Title VII cases. Because any public interest exception thus must be contained explicitly in a statute or rule, Rule 54(d)(1) should not be interpreted to include a public interest exception as defined by the judiciary on a case by case basis.

We further emphasize that Title VII, like many federal statutes, already contains incentives to serve the public interest as identified by Congress. For example, it provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C.§ 2000e-5(k). That provision entitles prevailing plaintiffs to fee awards unless "special circumstances would render such an award unjust," Newman v. Piggie Park Enterprises, 390 U.S. 400, 402 (1968), and thereby "advances the congressional purpose to encourage suits by victims of discrimination while deterring frivolous litigation," Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). But it is not for the district courts to add a similar type of provision as an exception to Rule 54(d)(1).

In summary, we conclude that the district court abused its discretion in relying on the factors that it did in denying Champion the presumptive award of costs under Rule 54(d)(1).

III

Because of our holding on the general award of costs, we must consider the district court's alternative ruling that 28 U.S.C. § 1920(2)

8

precludes Champion, as the prevailing party, from recovering both videotaping and stenographic costs. Section 1920 permits the taxing as costs of "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Even though that provision does not make explicit mention of costs associated with videotaping a deposition, we agree with the Tenth Circuit's conclusion that "section 1920(2) implicitly permits taxation of the costs of video depositions." Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471, 1477 (10th Cir. 1997); accord Morrison v. Reichhold Chemicals, Inc., 97 F.3d 460, 464-65 (11th Cir. 1996). This conclusion readily follows from Federal Rule of Civil Procedure 30(b)(2), which provides the party taking a deposition with the choice of alternative means for recording the testimony, including "by sound, sound-and-visual, or stenographic means."

But that conclusion does not necessarily entitle Champion to recover the costs of both transcribing and videotaping Cherry's deposition. Indeed, we believe that unless Champion demonstrates that both costs were "necessarily obtained for use in the case," 28 U.S.C. § 1920(2), only its transcription costs are recoverable. See Tilton, 115 F.3d at 1478 (adopting similar standard and stating that the district court must find an independent, legitimate use for both the transcription and the video recording before both sets of costs can be recovered under 28 U.S.C. § 1920(2)); cf. Morrison, 97 F.3d at 465 (holding that "when a party notices a deposition to be recorded by nonstenographic means, or by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed").

Champion asserts that videotaping Cherry's deposition was necessary to enhance its chances of effectively impeaching Cherry at trial. While that may be so, § 1920(2), read in conjunction with Rule 30(b)(2), requires more. The concept of necessity for use in the case connotes something more than convenience or duplication to ensure alternative methods for presenting materials at trial. See Fogleman v. ARAMCO (Arabian American Oil Co.), 920 F.2d 278, 285 (5th Cir. 1991) (stating that deposition costs reasonably incurred for trial preparation or for use at trial, "rather than for the mere convenience of

9

counsel," constitute taxable costs under 28 U.S.C. § 1920(2)). While there surely are circumstances when both a videotape and a transcript of a deposition may be necessary, Champion has not made the showing why either a transcript or a videotape would not have been sufficient for the need it identified. We cannot conclude that the district court abused its discretion in concluding, based upon the circumstances of this case, that it would deny both the cost to videotape and the cost to transcribe Cherry's deposition testimony. Accordingly, we will allow only transcription costs.

For the reasons given, we reverse the district court's judgment denying Champion costs and remand with instructions that the district court enter judgment in favor of Champion for deposition transcription costs in the amount of $2,353.18 and copying costs in the amount of $120.60, for a total cost award of $2,473.78.

REVERSED AND REMANDED WITH INSTRUCTIONS

10