Kenneth BLUM et al., Plaintiffs,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Enno Edzards et al., Plaintiffs,

v.

Raytheon Company, Defendant.

Ulrich Behrendt et al., Plaintiffs,

v.

Lucent Technologies, Inc. and General Electric Company, Defendants.

Karl–Heinz Schatz et al., Plaintiffs,

v.

Honeywell International, Inc. et al., Defendants.

No. EP–07–CV–099–PRM.

United States District Court, W.D. Texas, El Paso Division.

April 17, 2008.

Aron Uri Raskas, Philip Rogers Stein, James P. Ulwick, Steven M. Klepper, Kramon & Graham, PA, Baltimore, MD, Enrique Moreno, Law Offices of Enrique Moreno, El Paso, TX, Jonathan Auerbach, Stephen E. Connolly, Marcus Auerbach & Zylstra, LLC, Wyncote, PA, William A. Kershaw, Lyle W. Cook, Kershaw Cutter & Ratinoff LLP, Sacramento, CA, for Plaintiffs.

Carole A. Cheney, Kevin T. Van Wart, Michael Dierkes, Kirkland & Ellis, LLP, Chicago, IL, Mark N. Osborn, Shelly W. Rivas, Kemp Smith LLP, El Paso, TX, J.

Wylie Donald, McCarter & English, LLP, Newark, NJ, Kari B. Samuels, McCarter & English LLP, Philadelphia, PA, Moyahoena N. Ogilvie, McCarter & English, Hartford, CT, Joanna Shally, John C. Scalzo, Shearman & Sterling LLP, New York, NY, Shaniek Mills Maynard, Thomas Stephen Martin, Shearman & Sterling LLP, Kurt Hamrock, Michelle L. Hylton, Raymond B. Biagini, McKenna Long & Aldridge LLP, Washington, DC, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO SEVER AND DISMISS THE GERMAN PLAINTIFFS' CLAIMS PURSUANT TO THE DOCTRINE OF FORUM NON CONVENIENS AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO JOIN A PARTY UNDER RULE 19

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendants Lucent Technologies, Inc., General Electric Company, Raytheon Company, and Honeywell International, Inc.'s (collectively, "Defendants") "Motion to Sever and Dismiss the German Plaintiffs' Claims Pursuant to the Doctrine of *Forum Non Conveniens* and Brief in Support Thereof," ("Motion") filed on May 31, 2007; Plaintiffs' "Opposition to Defendants' Motion to Sever and Dismiss the German Plaintiffs' Claims Pursuant to the Doctrine of *Forum Non Conveniens*," filed on July 30, 2007; and Defendants' "Reply Brief in Support of Defendants' Motion to Sever and Dismiss the German Plaintiffs' Claims Pursuant to the Doctrine of *Forum Non Conve-*

*niens,*" filed on August 27, 2007,[1] in the above-captioned cause. After careful consideration, the Court is of the opinion that the Motion should be granted in part and denied in part for the reasons set forth below.

## I. BACKGROUND

The instant case is a consolidated action related to two other actions currently pending before the Court. The action is brought by 211 plaintiffs, some of whom are American and some of whom are German.[2] Mot. 1–2. Plaintiffs were members (or are suing as next of kin on behalf of members) of the German or American armed forces. Many Plaintiffs, German and American soldiers, were trained at Fort Bliss, in the El Paso Division of the Western District of Texas, which is "home to the United States Army Air Defense Artillery Center and School and to the German Air Force Air Defense School. Fort Bliss was the worldwide headquarters for training soldiers on the Nike and HAWK radar systems." Resp. 2–3. The design of these radar systems is at issue in the instant actions. Defendants submit a "Compilation Exhibit of Plaintiffs in the Consolidated Cases" as an exhibit to the instant Motion, which lists Plaintiffs' names, the case(s) in which they present their claims, their nationalities, the radar system (or systems) with which they allege they worked, any relevant training or work with the radar systems that took place in the United States, and the Defendants against whom the claims are asserted. *Id.* Ex. E. Plaintiffs have not objected to the list's accuracy, and, accordingly, the Court will assume that it is accurate.[3]

"Plaintiffs were unnamed members of the proposed classes in the consolidated action entitled *Marvin Norwood et al. v. Raytheon Company et al.* Case No. EP–04–CA–127–PRM," one of the related actions pending before the Court (hereinafter referred to as *"Norwood"*). Resp. 2. Plaintiffs direct their claims against four different American corporations which allegedly designed, manufactured, and/or distributed various radar devices which exposed users of those devices to dangerous-

---

1. The Court also considered Defendants' "Motion to Dismiss for Failure to Join a Party Under Rule 19" ("Rule 19 Motion"), filed on May 31, 2007; Plaintiffs' "Opposition to Defendants' Motion to Dismiss for Failure to Join a Party Under Rule 19," ("Rule 19 Response") filed on July 30, 2007; and Defendants "Reply in Further Support of their Motion to Dismiss for Failure to Join a Party Under Rule 19," ("Rule 19 Reply"), filed on August 27, 2007. The Rule 19 Motion will be dismissed without prejudice to subsequent refiling, given that the Court's ruling on the Motion to Sever and Dismiss may affect some of the arguments presented in the Rule 19 Motion.

2. There are 212 listed plaintiffs in the four causes consolidated into the instant action, but Plaintiff Bernd Roth is listed in two of the actions, so there are 211 total Plaintiffs. Mot. 1–2 n. 1.

3. Plaintiffs assert that the Complaints in the instant action omitted seventeen Plaintiffs' allegations with respect to whether they trained at either Fort Bliss or another United States military base. Resp. 22 n. 3; Resp.App. Ex. A ¶¶ 7–8 (listing the names and training locations of the Plaintiffs whose allegations with respect to their training in the United States were omitted in the Complaints). The Court will assume, as Defendants have not objected to Plaintiffs' additional allegations with respect to these seventeen Plaintiffs, that Defendants do not object to the Court's consideration of these allegations. The Court will therefore proceed as though these seventeen Plaintiffs had amended their Complaints to include allegations of training at Fort Bliss or another United States military base. *See* Fed R.Civ.P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.").

ly high levels of ionizing radiation. Fourth Am. Compl. ¶¶ 87–91 (Docket No. 23). Plaintiffs also allege that Defendants "failed to provide governmental and military authorities with sufficient information regarding the health hazards associated with the Radar Device(s), preventing such authorities from making informed decisions about the Radar Device(s) and from providing appropriate warnings to Plaintiff[s]." *Id.* at ¶ 92. Plaintiffs allege this radiation caused them to contract various types of cancers. *See* Am. Compls. (Dockets Nos. 20–23) (listing the injury or injuries suffered by each Plaintiff in the instant action). The suits consolidated into the instant action were filed in Texas state court between December 2006, and January 2007, were removed to federal court in January 2007, and consolidated by Order of the Court on April 26, 2007. Docket No. 15.

The plaintiffs in the *Norwood* case filed a motion for class certification, which motion was denied, and many of the unnamed plaintiffs re-filed their claims in one or more of the cases now consolidated into the instant action. Resp. 5. Before the Court denied the motion for class certification, it had considered a motion to dismiss the claims of all plaintiffs on the basis of the doctrine of forum non conveniens.[4] *Id.* at 4. The Court held that "private interests do not weigh in favor of dismissal" in that case, and, noting the presence of American citizens in the suit, "decline[d] to exercise its 'discretion to deny a citizen access to the courts of this country.'" *Id.*

at *9 (quoting *Burt v. Isthmus Dev. Co.,* 218 F.2d 353, 357 (5th Cir.1955)).

Defendants in the instant action urge the Court to sever the claims of all the German Plaintiffs from those of the American Plaintiffs, and dismiss the German Plaintiffs' claims on the basis of the doctrine of forum non conveniens. Mot. 2. They distinguish the instant action from *Norwood* alleging that it is now feasible to separate the German Plaintiffs' claims from those of the American Plaintiffs as the name, nationality, and nature of each Plaintiff's claim is now set forth in the pleadings. *Id.* at 2–3. Defendants further distinguish the instant Motion from the one filed in *Norwood* insofar as in *Norwood,* "every plaintiff, whether German or American, alleged that he (or his/her decedent) had trained [at Fort Bliss]. In the present case, only about 15% of the German plaintiffs have a Fort Bliss connection." *Id.* at 2 n. 2. They assert that 195 of the 211 Plaintiffs are German, and that most of the German Plaintiffs "allege *no connection whatsoever* to the Western District of Texas—or even to the United States." *Id.* at 4 (emphasis in original).

Defendants point to the Court's observation in the *Norwood* FNC Order that "Defendants ... provide no authority that would give the Court the power to divide Plaintiffs into two groups and dismiss the German Plaintiffs." Mot. 26 (quoting *Bund Zur Unterstutzung Radargeschadigter E.V.,* 2006 WL 3197645, at *9 n. 8). They argue that it would be more conve-

---

4. The Court referred that motion to a Magistrate Judge for the preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On August 18, 2003, the Magistrate Judge recommended that the motion be granted and that the plaintiffs litigate their claims in Germany. After *de novo* consideration of the issues presented, the Court denied the motion by Order on September 29, 2003. *Norwood* Docket No. 86. The Court issued a "Memorandum Denying Defendants' Motion to Dismiss Pursuant to Doctrine of Forum Non Conveniens" ("*Norwood* FNC Order") on August 30, 2006, supplementing and explaining the Order of September 29, 2003. *Bund Zur Unterstutzung Radargeschadigter E.V. v. Raytheon Co.,* No. 04–CV–127–PRM, 2006 WL 3197645, *1 (W.D.Tex. Aug.30, 2006); *Norwood* Docket No. 300.

nient for the parties and reduce the overall cost of litigation to sever and dismiss the German Plaintiffs' claims pursuant to the doctrine of forum non conveniens and Federal Rule of Civil Procedure 21 ("Rule 21"), respectively. *Id.* at 26–27.

Plaintiffs respond that Defendants' Motion is "at heart ... a motion to reconsider" the Court's *Norwood* FNC Order. Resp. 10. Plaintiffs note that the Court, in the *Norwood* FNC Order, expressed a concern that " 'even if the Court could segregate the Plaintiffs, [as suggested by Defendants,] it appears such a move would thwart the ultimate goal of convenience, forcing Defendants to defend multiple claims in two different forums, and thereby increasing the costs associated with litigation.' " *Id.* (quoting *Bund Zur Unterstutzung Radargeschadigter E.V.,* 2006 WL 3197645, at *9 n. 8). Plaintiffs submit that all Plaintiffs are properly joined in the consolidated action, that severance would not further convenience or judicial economy, and that "it makes no practical or logical sense to sever the claims along lines of nationality." *Id.* at 6. They argue that dismissal pursuant to the doctrine of forum non conveniens is inappropriate because some of the German Plaintiffs allege injuries stemming from training at Fort Bliss or other United States military bases, and "[n]o [c]ourt has ever granted *forum non conveniens* dismissal of claims where some injury occurred on American soil." *Id.* at 3.

## II. RULE 21 SEVERANCE

### A. Legal Standard

Pursuant to Rule 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "Rule 21 is a mechanism for remedying ... the misjoinder of parties." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1683 (3d ed.2001). Generally, "the impulse [under the Federal Rules of Civil Procedure] is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (*superseded by statute on other grounds,* 28 U.S.C. § 1367 (setting forth that federal courts may have supplemental jurisdiction over state law claims related to claims over which the courts have original jurisdiction.)).

"The trial court has broad discretion to sever issues to be tried before it." *Brunet v. United Gas Pipeline Co.,* 15 F.3d 500, 505 (5th Cir.1994). Rule 21 is an appropriate vehicle to sever or dismiss the claims of even properly joined parties. *United States v. O'Neil,* 709 F.2d 361, 369 (5th Cir.1983) (holding that while curing misjoinder of parties is "certainly a primary concern of Rule 21, it is not so limited."); *see also Spencer, White & Prentis Inc. of Conn. v. Pfizer Inc.,* 498 F.2d 358, 361 (2d Cir.1974) ("[J]ustification for severance is not confined to misjoinder of parties....."). A Court may invoke Rule 21 in order to sever and transfer claims amenable to transfer. *Delce v. Amtrak,* 180 F.R.D. 316, 320 (E.D.Tex.1998) ("[W]here claims are more properly tried in another forum, severance is the judicial tool of choice.").

### B. Analysis

Defendants assert that "[s]everance is warranted ... because a great majority of the claims belong in an alternative forum." Mot. 24. They argue that "[s]ubstantially all (if not all) of the evidence relating to exposure, medical evidence, duty to warn, and statute of limitations related to the German Plaintiffs' claims will be found in Germany, not in the United States," and

that trying the German Plaintiffs' claims in this Court is inconvenient and burdensome. *Id.* at 16, 26. Relying on *Delce,* Defendants urge the Court to sever the claims pursuant to Rule 21, arguing that "propriety of *forum non conveniens* dismissal provides 'sufficient other reasons' for ordering severance of [the German Plaintiffs'] claims." Reply 20 (citing *Delce,* 180 F.R.D. at 320); *see also Wyndham Assoc. v. Bintliff,* 398 F.2d 614, 618 (2d Cir.1968) (holding that Rule 21 "authorizes the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance.").

Plaintiffs respond that it would be inappropriate for the Court to sever the claims solely on the basis of the Plaintiffs' nationalities. Resp. 6. They point to the Court's "Order Granting in Part and Denying in Part Defendants' Motion to Sever the Claims of Jack Cooper, Erwin Bast and Joan Fridriksson," in which the Court discussed severance of parties both improperly and properly joined ("*Norwood* Severance Order"). *Id.* at 6–7; *see also Norwood* Docket No. 356. Plaintiffs submit that all parties in the instant action are properly joined,[5] and argue that similarities in the alleged proximate cause of Plaintiffs' injuries (i.e. similar radar devices), rather than nationality, control whether or not severance is warranted. Resp. 8. In support for their position that severance is unwarranted in this case, Plaintiffs rely on the Court's observation in the *Norwood* Severance Order that "the question of whether Germany is a more convenient forum for the resolution of [one plaintiff's] claims has no bearing on whether Plaintiffs' claims satisfy the permissive joinder requirements of Rule 20." *Id.* at 9 (quoting *Norwood* Severance Order 9 n. 5). Plaintiffs submit that granting the instant Motion would "thwart the ultimate goal of convenience." *Id.* at 10.

As discussed *supra,* severance may be appropriate where transferring some, but not all, claims to another forum is warranted. *Delce,* 180 F.R.D. at 320; *Wyndham Assoc.,* 398 F.2d at 618. However, in the instant Motion, Defendants do not seek to transfer the claims, but to dismiss them pursuant to the doctrine of forum non conveniens.[6] The only authority Defendants offer which suggests that

---

**5.** Defendants do not assert that Plaintiffs' claims are improperly joined. Instead, they rely on Rule 21's authorization of " 'the severance of any claim, even without a finding of improper joinder, where there are sufficient other reasons for ordering a severance.' " Mot. 23 (quoting *Acevedo–Garcia v. Monroig,* 351 F.3d 547, 560 n. 5 (1st Cir.2003)). Therefore, there being no argument or evidence to the contrary, the Court will presume all Plaintiffs are properly joined.

**6.** Many of the arguments relevant to a motion to transfer pursuant to 28 U.S.C. § 1404(a) are also relevant to a motion to dismiss pursuant to the doctrine of forum non conveniens, which perhaps contributes to confusion between the federal transfer statute and the common law dismissal doctrine. *See, e.g., Uszynski v. Butterfield,* No. 06–CV–13216, 2006 WL 2865220, *2 (E.D.Mich. Oct.5, 2006)

(analyzing a motion for transfer pursuant to § 1404(a) under the heading *"Forum Non Conveniens"*); compare *Genesis Ins. Co. v. Alfi,* 425 F.Supp.2d 876, 895 (S.D.Ohio 2006) ("[The] transfer of venue function of the forum non conveniens doctrine has been superseded by statute, ... and to the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law forum non conveniens doctrine, we have done so only in 'cases where the alternative forum is abroad.' ") (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996)). "With the relative ease of transfer under Section 1404(a), the harsh step of dismissal of the action under the forum non conveniens principle has become unnecessary in most circumstances." WRIGHT ET AL., *supra,* at § 3828.

severance is appropriate where claims can be dismissed pursuant to the doctrine of forum non conveniens is *Warter v. Boston Sec., S.A.,* 380 F.Supp.2d 1299, 1307 (S.D.Fla.2004), which held,

> [i]n cases involving multiple defendants, when dismissal on forum non conveniens grounds would further 'the administration of justice,' but venue in the alternative forum is not appropriate for one or more of the defendants, the Court may sever claims against those defendants if they are alleged to be only indirectly connected to the conduct forming the primary basis of the action.

*Warter,* 380 F.Supp.2d at 1307 (quoting *Wyndham Assocs. v. Bintliff,* 398 F.2d 614, 618 (2nd Cir.1968)).

■ The Court is aware of no authority contradicting Defendants' unchallenged assertion that where a dismissal pursuant to the doctrine of forum non conveniens is warranted for some plaintiffs, there exists sufficient cause to sever otherwise properly joined parties. The Court acknowledges that dismissing some Plaintiffs may affect their ability to re-file their claims in Germany insofar as applicable statutes of limitation or other law may bar such filing, but relies on Defendants' representation "that they will submit to the jurisdiction of German courts should the dismissed German Plaintiffs choose to re-plead this action in Germany." Mot. 11. If the German courts were to *sua sponte* find that they lack jurisdiction on the basis of applicable statutes of limitation or other law, that problem could be remedied by the Court's retaining jurisdiction should German law prevent re-filing. *See Warter,* 380 F.Supp.2d at 1307 ("[A] court may dismiss the case on forum non conveniens grounds, retain jurisdiction, and reinstate the case if the foreign forum refuses to accept jurisdiction.") (citing *Leon v. Million Air, Inc.,* 251 F.3d 1305, 1313 (11th Cir.2001)).

The Court finds that dismissing some, but not all, Plaintiffs pursuant to the doctrine of forum non conveniens may warrant severance and dismissal of those Plaintiffs' claims, and that the Court would retain jurisdiction over the dismissed claims should the foreign forum decline jurisdiction. Accordingly, the Court will determine whether any Plaintiffs should be dismissed pursuant to the doctrine of forum non conveniens.

## III. FORUM NON CONVENIENS

■ "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).[7] It permits federal courts to "relinquish their jurisdiction in favor of another [more convenient] forum," albeit "[i]n rare circumstances." *Quackenbush,* 517 U.S. at 722, 116 S.Ct.

---

**7.** The Court in *Gulf Oil* addressed the convenience between two domestic fora. 330 U.S. at 502–03, 67 S.Ct. 839. Now, however, 28 U.S.C. § 1404(a) permits transfer between two federal districts, so "[forum non conveniens] is only appropriate when the more convenient forum is in a foreign country or perhaps, under rare circumstances, that forum is a state court or a territorial court." WRIGHT ET AL., *supra,* § 3828. Nevertheless, the factors set forth in *Gulf Oil* have remained as the established factors that guide a forum non conveniens inquiry. *See e.g., Baumgart v. Fairchild Aircraft Corp.,* 981 F.2d 824 (5th Cir.1993) (applying *Gulf Oil* factors); *In re Air Crash Disaster Near New Orleans,* 821 F.2d 1147 (5th Cir.1987) (applying *Gulf Oil* factors), *aff'd in part, vacated in part on other grounds,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400, *vacated on other grounds sub nom. Pan Am. World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989).

1712. "When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138, 1141 (5th Cir.1989) (quoting *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)) (alterations in original).

■ A forum non conveniens dismissal "rests upon a court's inherent power to control the parties and cases before it and to prevent its process from becoming an instrument of abuse or injustice." *In re Air Crash,* 821 F.2d at 1153–54. "[A] forum non conveniens dismissal must be based on the finding that, when weighed against plaintiff's choice of forum, the relevant public and private interests strongly favor a specific, adequate and available alternative forum." *Veba–Chemie A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir.1983) (citing *Gulf Oil,* 330 U.S. at 501, 67 S.Ct. 839).

■ The party seeking dismissal "bears the burden of invoking the doctrine and moving to dismiss in favor of a foreign forum." *In re Air Crash,* 821 F.2d at 1164. "This burden of persuasion runs to all the elements of the forum non conveniens analysis." *Id.* To justify dismissal, the moving party "must demonstrate (1) the existence of an available and adequate alternative forum and (2) that the balance of relevant private and public interest factors favors dismissal." *Vasquez v. Bridge-*

stone/Firestone, Inc., 325 F.3d 665, 671 (5th Cir.2003) (citation omitted). The burden on the movant is relatively high. 14D WRIGHT, MILLER & COOPER, *supra,* at § 3828.

Although the doctrine frequently is discussed in terms of 'convenience,' it probably is better thought of as a doctrine about avoiding 'undue burden.' A plaintiff's choice of forum should be disturbed only if the burden on the defendant and the chosen federal court is undue, taking into account the relationship among several factors, including the circumstances and nature of the case, the parties, and the United States.

*Id.* The defendant must supply the Court with enough information for it to conduct a meaningful inquiry and balance the parties' interests. *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.,* 955 F.2d 368, 371 (5th Cir. 1992).

When considering private and public factors in determining whether to dismiss a case, "no one ... factor should be given conclusive weight," *In re Air Crash,* 821 F.2d at 1163, because "[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility that makes it so valuable," *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249–50, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "Unless the balance of these factors is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Torreblanca de Aguilar v. Boeing Co.,* 806 F.Supp. 139, 143 (E.D.Tex.1992) (citing *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839).

There is no dispute that Germany presents an available and adequate forum to litigate personal injury claims,[8] and so the

---

8. "Plaintiffs do not challenge the Court's previous finding that Germany presents an available and adequate forum to litigate personal

injury claims." Resp. 11 (referring to the *Norwood* FNC Order, in which the Court held

Court will proceed to determine whether the relevant public and private interest factors weigh in favor of dismissal. Thus, "the court must next assess whether, considering relevant private interest and public interest factors, dismissal is warranted." *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 221–22 (5th Cir.2000).

## A. Deference Afforded to Plaintiff's Choice of Forum

 "In addition to the balancing of relevant private interest factors, the court must give 'the relevant deference' to the plaintiff's choice of forum." *Id.* at 222 (quoting *In re Air Crash,* 821 F.2d at 1165). Normally, there is a "strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Schexnider v. McDermott, Int'l, Inc.,* 817 F.2d 1159, 1163 (5th Cir. 1987). This presumption, however, applies with less force where the plaintiffs are foreign. *Piper,* 454 U.S. at 256, 102 S.Ct. 252. "When a plaintiff chooses a foreign forum for its claims, courts are reluctant to assume that convenience motivated that choice," and therefore the plaintiff's choice is entitled to less deference than would otherwise be afforded it. *Empresa Lineas,* 955 F.2d at 373 (citing *Piper,* 454 U.S. at 255–56, 102 S.Ct. 252). That said, "less deference is not the same thing as no deference." *Ravelo Monegro v. Rosa,* 211 F.3d 509, 514 (9th Cir.2000). In other words, "less deference is not an invitation to accord a foreign plaintiff's selection of

an American forum no deference since dismissal for forum non conveniens is the exception rather than the rule." *In re Air Crash,* 821 F.2d at 1164 n. 26 (citations omitted). Even with a lesser degree of deference, "[t]he action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[9] *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 74–75 (2d Cir.2001).

Accordingly, the Court finds that the German Plaintiffs are not entitled to the deference afforded to domestic plaintiffs suing in their home forum. Even affording the German Plaintiffs a lesser degree of deference, the Court finds that the private and public factors do not justify dismissing the claims of those plaintiffs who allege that some part of their injury occurred in the United States in favor of a German forum. However, with respect to the German Plaintiffs who do not allege any connection between their injury and the United States, the Court finds that the private and public factors indeed justify their dismissal in favor of a German forum.

## B. Private Interest Factors

 When evaluating a forum non conveniens motion, the Court must consider the following private interest factors:

[t]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; probability of view of premises, if view would be appropriate to the action;[10] and all other practical prob-

---

that Germany is an adequate and available forum.)

9. By "chosen forum," the Court understands the Second Circuit to mean the forum selected by the plaintiff, and by "selected forum," the forum which the defendant asserts is more convenient.

10. Neither party discusses whether "viewing the premises" is an applicable consideration in the instant case, and the Court has no reason to believe that it is, and, thus, will not address this factor in its analysis.

lems that make trial of a case easy, expeditious and inexpensive.

*In re Air Crash,* 821 F.2d at 1162 (quoting *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. 839).

██ Defendants assert that the German Plaintiffs are "seeking redress for alleged injuries suffered in Germany while in the service of the German army, who discovered their potential cause of action in Germany, and whose various illnesses have been treated in Germany. Therefore, the private interest factors all point to a German forum." Mot. 12. Plaintiffs contend that "Defendants have failed to meet their evidentiary burden of demonstrating that the private interest factors weigh heavily in favor of dismissal." Resp. 20. The Court will evaluate each private interest factor separately.

### 1. Relative Ease and Access to Sources of Proof

Defendants assert that "the vast majority" of relevant evidence is located in Germany, and written in German. Mot. 13. This includes evidence related to (1) the amount of radiation to which individual Plaintiffs were exposed while serving in the German armed forces, (2) the diagnosis, treatment, and extent of Plaintiffs' injuries, (3) individual Plaintiffs' awareness of the risks associated with working with the radar equipment, (4) whether statutes of limitation may be available as a defense, and (5) the design and manufacture of the radar devices. *Id.* at 13–15. Defendants acknowledge that a significant amount of evidence related to the design and manufacture of the devices is located in the United States, but assert that the evidence "no longer ties this case to the United States, since the documentary evidence has been produced to the attorneys representing the German Plaintiffs." *Id.* at 16.

Defendants assert that the main consideration for the Court should be "not where the documents are physically located, but whether the parties will be able to access them less readily, or at all, in one of the forums." Reply 6 (citing *Baumgart,* 981 F.2d at 837). They assert that the documents can be produced just as easily in Germany as in Texas because Plaintiffs' counsel already has possession of the documents located in the United States *Id.* at 7. Defendants assert that in order for them to access much of the evidence located in Germany, they would be required to seek documents or testimony from third parties, and "there may be no adequate means to obtain this evidence in an action venued in the United States." *Id.* Defendants also argue that because this evidence is in the possession of third parties, compulsory process will be necessary with respect to at least some of that evidence, thus implicating the Multilateral Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), which "may block discovery indefinitely as it pertains to the German government's sovereignty and security." *Id.* at 6–8.

Plaintiffs assert that "litigation in Germany would be extraordinarily inconvenient at best, impossible at worst," because the International Traffic in Arms Regulations ("ITAR"), 22 C.F.R. §§ 120 *et seq.,* bar disclosure of certain information relating to the radar devices to any foreign national, including the German Plaintiffs, any counsel of German nationality, and any German judge or jury. Resp. 11. Plaintiffs assert that a large number of the documents produced by Defendants are at least potentially subject to ITAR protection, and that because German counsel, judges, and plaintiffs would not be able to review those documents, it would be impossible for them even to determine whether the documents are subject to ITAR protection. *Id.* at 12–13.

Plaintiffs argue that "it makes no sense, after the amount of relevant discovery conducted in this forum, to send the German Plaintiffs' cases to Germany," and that "the level of merits discovery conducted in this forum weighs against dismissal under Fifth Circuit law." Resp. 14. Plaintiffs also assert that discovery in the United States is ongoing and will include thousands of rolls of microfilm potentially containing documents related to this litigation as well as "large stores of documents from the United States government archives." *Id.*

Defendants respond to Plaintiffs' assertion that ITAR regulations would prevent a German forum from adjudicating the case by pointing out that the United States Department of State, not the parties or a court, determines whether or not a document should be protected by ITAR. They note that "German judges at this very moment are adjudicating cases involving radar systems in Germany," and that not only the German Plaintiffs, but also German judges and counsel, can obtain ITAR licenses, and access to the documents, pursuant to the same license. Reply 9. Essentially, Defendants argue that Plaintiffs can more easily obtain evidence from Defendants in a German lawsuit than Defendants can from German third parties in a United States lawsuit.

The Court finds that, while a large quantity of evidence is located in the United States, the vast majority of it is already in the possession of the parties, and can be accessed by the German Plaintiffs in a lawsuit taking place in Germany. Furthermore, as it is undisputed that evidence is in the possession of third parties (doctors, family members, commanding officers, and others with knowledge of the German Plaintiffs' circumstances) who live in Germany, and the Court cannot compel the production of evidence held by third

parties outside of its district, continuing litigation in the United States may leave Defendants without the ability to access evidence relevant to their defense against the German Plaintiff's claims. *Natural Gas Pipeline Co. v. Energy Gathering,* 2 F.3d 1397, 1406 (5th Cir.1993). As in *Baumgart,* where the relative ease of access to sources of proof weighed in favor of dismissal, despite there being significant amounts of evidence in the United States, the Court finds that it is easier for the German Plaintiffs to access the bulk of the evidence located in the United States from Germany than it would be for Defendants to access evidence held by third parties in Germany.

It is well settled that "a license is required for the oral, visual, or documentary disclosure of technical data by United States persons to foreign persons." 22 C.F.R. § 125.2(c).

> The Arms Export Control Act assigns to the President the power to control the export and import of defense articles and services. The regulations promulgated under the Arms Export Control Act and administered by the Department of State are known as the International Traffic in Arms Regulations (ITAR). ITAR includes specific limitations on which persons are eligible to receive 'significant military equipment' and related 'technical data,' which may include unclassified data. Such information may not be disclosed by United States persons to a 'foreign person' without a license from the State Department.

Charles F. Rysavy & Pranita A. Raghavan, *The (Often Insurmountable) Hurdles Facing Foreign Claimants Prosecuting Class Actions in American Courts,* 42 Tort Trial & Ins. Prac. L.J. 1, 25–26 (Fall 2006) (citing 22 C.F.R. §§ 120 *et seq.*). There is no apparent dispute that at least

some of the documents in Defendants' possession, or already produced to Plaintiffs, is subject to ITAR protection and requires an ITAR license to be disclosed to foreign persons. Resp. 11; Reply 9. ITAR defines a "foreign person" as "any natural person who is not a lawful permanent resident.... It also means any foreign corporation, business association, partnership, trust, society or any other entity or group that is not incorporated or organized to do business in the United States." 22 C.F.R. § 120.16. Therefore, in order for any German Plaintiff, counsel, or judge to access ITAR protected documents, they would be required to obtain a license, and the process of obtaining a license could significantly delay the resolution of Plaintiffs' claims.

Particularly because the parties, with the assistance of a Special Master,[11] have devised a workable solution to the ITAR challenge in the United States, and a proceeding in Germany would, at a minimum, require that both the German Plaintiffs and the German judge obtain an ITAR license,[12] the Court believes that ITAR regulations will pose a more significant problem were the claims to be presented in Germany. However, as discussed *supra*, Defendants will also have significant problems obtaining evidence if the claims are to proceed in the United States. Therefore, the Court finds that challenges will exist in either forum with respect to the ease of access to sources of proof, and, therefore, the Court finds that this factor is equipoise between the two fora.

### 2. Compulsory Process for Attendance of Unwilling Witnesses

Defendants argue that the "Court does not have the power to compel the attendance of unwilling German witnesses at deposition or trial," and even if Defendants are able to depose German witnesses under the Hague Convention, the witnesses "still could not be compelled to testify live at trial." Mot. 16–17. Defendants submit that

> [c]entral to the defense of claims brought by German military personnel will be demonstrating what and when German military and government officials knew about potential ionizing radiation hazards related to this radar equipment. Without the compulsory power of the Court, many of these witnesses may simply choose not to participate in a live trial.

*Id.* Defendants argue that they will be compelled to produce their witnesses in either forum, as they control employees, agents, and other witnesses designated by Defendants, but that the Court cannot compel German Plaintiffs to produce witnesses such as "family members, co-workers, employers, physicians, fellow military personnel, commanding officers, government contracting ages, and witnesses who may have knowledge relevant to the statute of limitations defense." Reply 11.

Plaintiffs argue that many potential witnesses identified by Defendants are Americans not under Defendants' control. Resp. 16. Plaintiffs argue that some of these witnesses will testify about training provided at United States military bases

---

11. On August 31, 2005, the Court issued an "Order Appointing Special Master," in *Norwood,* to hear and rule on "any pre-trial discovery disputes between the parties." *Norwood* Docket. No. 249. The parties have met with the Special Master to resolve disputes in both *Norwood* and the instant action, as Defendants represented in their "Motion for Extension of Time to File Scheduling Order," filed on July 10, 2007. Docket No. 38.

12. Defendants assert that, "a German judge (and German counsel) could be covered by the same ITAR license that would cover the German plaintiffs." Reply 9.

which many German Plaintiffs received. *Id.* For example, Plaintiffs note that Felix Mitchell, a former Army Warrant Officer who Defendants have identified as a potential witness, will testify regarding warnings and training provided at Fort Bliss, and is not subject to Defendants' control. Resp. 16; *Id.* Ex. I. Plaintiffs conclude that "[g]iven the substantial number of witnesses located in the United States, this factor does not weigh in favor of trial in Germany." *Id.* at 16–17.

Defendants properly note that the lack of compulsory process over witnesses in a foreign forum weighs in favor of dismissal. The Court recognizes that relevant witnesses in Germany *might* not willingly testify and are *potentially* beyond the reach of the Court, although Defendants have failed to identify a single witness who would, in fact, be unwilling to testify. However, the Court believes that if the case proceeded in Germany, witnesses essential to the resolution of at least some of the German Plaintiffs' claims would similarly be beyond the reach of the German courts. For example, any witnesses linked to the United States Army or Fort Bliss are not necessarily under the control of any of the parties, and compulsory process over those witnesses would not exist in Germany. Defendants submit that many German Plaintiffs trained at Fort Bliss and others trained at other United States military bases. Reply 11. Testimony related to training or other activities in the United States may be crucial to the claims of those Plaintiffs, even if the same cannot be said for those German Plaintiffs alleging no such connection to the United States. The Court finds this too important a point to ignore, and concludes that forcing German Plaintiffs who allege that at least part of their injury arose at Fort Bliss or other United States military bases to litigate their claims in Germany only inverts the problem of lack of compulsory process over witnesses, and counsels against dismissal. However, with respect to those German Plaintiffs who do not allege any connections to Fort Bliss or other United States military bases, this factor supports the dismissal of their claims.

### 3. Cost of Obtaining Evidence

Defendants argue that the cost of obtaining evidence weighs in favor of dismissing the case. Mot. 17–19. They admit that "there is evidence in the United States relevant to the plaintiffs' claims that may require translation from English to German in connection with a German legal proceeding." *Id.* at 18. They argue, however, that Plaintiffs will be able to review the evidence and select only that which is necessary for the prosecution of German Plaintiffs' claims to be translated into German, as Plaintiffs' American counsel either has possession of, or will soon have possession of, all documents Defendants produce. Defendants assert the burden on Defendants to translate "medical records, service records, training manuals, operational manuals, government records and investigation reports, media stories, and insurance and disability payment information" into English before they can be reviewed is much heavier than Plaintiffs' burden. *Id.* at 18–19. They conclude that this factor supports dismissal because "Defendants cannot minimize the cost of translation as effectively as plaintiffs can minimize the costs of translation into German." *Id.* at 19.

Plaintiffs argue that translation costs exist in either forum, and that there is no reason to depart from the Court's previous finding in *Norwood* that "[t]his is not a case where all the relevant documents and all the necessary witnesses are found in the foreign forum, such that convenience mandates dismissal." Resp. 17 (quoting

*Bund Zur Unterstutzung Radargeschadig-ter E.V.*, 2006 WL 3197645, at *8).

While there will be translation costs regardless of the forum, the Court finds that Defendants' argument has merit. Plaintiffs will have the benefit of the discovery produced in *Norwood*, as Plaintiffs in both causes are represented by the same counsel. Moreover, that counsel will be readily familiar with the discovery already produced. Thus, it will be less costly for the German Plaintiffs to identify and translate documents necessary to the prosecution of their claims. Defendants, on the other hand, will need to collect documents from the German Plaintiffs and translate them before any meaningful review of the information can begin. Furthermore, Defendants will need to translate and review documents from each of nearly two-hundred Plaintiffs, and Plaintiffs need only review documents from the four Defendants involved in the action. However, the Court notes that two of the Defendants have retained counsel with offices in Germany, where German-speaking attorneys might identify and translate only those documents necessary to properly defend against the claims filed against them.[13] Therefore, the Court finds that this factor weighs only slightly in favor of dismissal.

### 4. Enforceability of Judgment

In the *Norwood* FNC Order, the Court found that a judgment in either the United States or Germany would be enforceable. *Bund Zur Unterstutzung Radargeschadig-ter E.V.*, 2006 WL 3197645, at *8. No party

has suggested otherwise, and so the Court finds that this factor is equipoise between the two fora.

### 5. Defendants' Ability to Implead Third Party Defendants

Defendants assert that the German government is a third party defendant that they are unable to implead "due to the protection of the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602–1611."[14] Mot. 20. They argue that "[i]f Defendants are held liable, the role of the German government in plaintiffs' alleged injuries must be resolved through a claim for contribution or indemnification by Defendants," and because they cannot sue Germany in the United States, those claims would need to be litigated in Germany. *Id.*

Plaintiffs argue that Germany is not an indispensable party, and that Federal Rule of Civil Procedure 19 "does not require the joinder of joint tortfeasors." Resp. 18. They assert the Court should not be concerned with Defendants' claim "that it would be inconvenient to assert [their] claims against the German government] at a later date in the event they are held liable to Plaintiffs" because the joinder is unnecessary. In Defendants' Rule 19 Motion, they assert that Plaintiffs' failure to join Germany as a defendant requires the dismissal of the cause because Germany is an indispensable party that cannot be joined to this suit because of its sovereign immunity. Rule 19 Mot. 2. Plaintiffs assert that the Rule 19 Motion "is designed

13. Kirkland & Ellis, LLP, a law firm representing Defendant Raytheon Company, has an office in Munich. Shearman & Sterling, a law firm representing Defendant General Electric Corporation, has offices in Dusseldorf, Frankfurt, and Munich.

14. The Foreign Sovereign Immunities Act sets forth that "a foreign state shall be immune

from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605–1607 of this chapter." 28 U.S.C. § 1604. No party has suggested that any of the exceptions provided in the Act would apply such that Germany would be subject to the jurisdiction of the courts of the United States in this action.

mainly to bolster the credibility of this portion of their *forum non conveniens* argument." Resp. 19 n. 2. Plaintiffs assert that "[t]he significance of [Defendants'] hypothetical claims against the German government remains slight at best," noting that Defendants did not raise any argument with respect to joining Germany in *Norwood* until Plaintiffs brought the issue to Defendants' attention.[15] *Id.* at 18.

In response to Plaintiffs' assertion that Germany is not an indispensable party, Defendants assert that "Rule 19 is immaterial to *forum non conveniens* dismissal. Under Fifth Circuit law, the inability of the Defendants to implead the German government weighs in favor of dismissal." Reply 13 (citing *Baumgart*, 981 F.2d at 836). In support of the instant Motion, Defendants do not rely on Germany being an indispensable party. Rather, they argue that they would be inconvenienced if required to file a separate action in Germany for any contribution or indemnity claims they may have against Germany, and that this inconvenience supports dismissal. *Id.* at 13.

 Although *Baumgart* does not discuss this factor in depth,[16] the Fifth Circuit has found the inability to implead a third party defendant weighs in favor of dismissal, even where the defendant can bring claims against the third party in another forum. *Empresa Lineas*, 955 F.2d at 374 ("We cannot say that the district court acted unreasonably in finding that [the defendant's] defense would be prejudiced if [the plaintiff] won judgment in the United States and [the defendant] subsequently had to seek indemnity or contribution against [the potential third party defen-

dant] in a foreign forum that is not bound to honor that judgment."). Accordingly, the Court finds that this factor weighs in favor of dismissal.

### 6. Conclusion of Private Interest Factors

As a whole, the private interest factors favor dismissing the claims of those German Plaintiffs who have not alleged any connection to Fort Bliss or any other United States military base. However, with respect to those German Plaintiffs who allege at least some injury occurred at Fort Bliss or another United States military base, only one of the private interest factors weighs in favor of dismissal. Affording the German Plaintiffs a lesser degree of deference to their choice of forum, the Court finds Defendants have shown that trial in Germany would be more convenient than trial in the United States only for the German Plaintiffs who allege no connection to Fort Bliss or another United States military base. With respect to the other German Plaintiffs, the Court does not find that a trial in Germany would be any more convenient than a trial in the United States.

### C. Public Interest Factors

 "If the district court finds that the private interests do not weigh in favor of the dismissal, it must then consider the public interest factors." *In re Air Crash*, 821 F.2d at 1165. However, where "the private interest factors weigh in favor of a *forum non conveniens* dismissal, [a court need not [consider the] 'public interest' factors." *Baumgart*, 981 F.2d at 837 (quoting *Empresa Lineas Maritimas*, 955

---

**15.** *Norwood* FNC Order 16.

**16.** The Fifth Circuit, in *Baumgart,* noted without discussion that "the inability of [the defendant] to implead [third party defendants] if

the case were retained in the United States" was one of six private interest factors which the district court reasonably found favored dismissal. 981 F.2d at 836.

F.2d at 376.). "The Supreme Court has outlined four public interest factors to be weighed in the forum non conveniens inquiry: (1) administrative difficulties associated with court congestion; (2) the unfairness of imposing jury duty on a community with no relation to the litigation; (3) the 'local interest in having localized controversies decided at home;' and (4) avoiding difficult problems in conflict of laws and the application of foreign law." *Kempe*, 876 F.2d at 1141 (quoting *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. 839.).

■ Because the Court finds that the private interest factors do not justify dismissal of the German Plaintiffs who allege a connection to either Fort Bliss or another United States military base, it must consider the public interest factors with respect to those Plaintiffs. However, with respect to the German Plaintiffs who do not allege a connection to either Fort Bliss or another United States military base, as the Court has found the private interest factors weigh in favor of dismissal, there is no need to consider the public interest factors, and the claims of those Plaintiffs will be dismissed.

### 1. Administrative Difficulties Associated With Court Congestion

Defendants assert that "the relative docket size and congestion of German courts compared to those of the United States weigh in favor of dismissal," noting that "Germany has 24.72 judges per 100,-000 inhabitants; the United States has 1.2." Mot. 21. Defendants note that cases in German courts tend to have a shorter duration than cases in United States courts ("4.4 months for district courts and 7.2 months for the regional courts" compared to eleven months in United States courts), and that there are fewer pending cases per judge in Germany (64 pending cases per judge in Germany compared to 1,164 pending cases per judge in the United States). *Id.* Defendants conclude that "German courts are more efficient and less congested than their American counterparts." *Id.*

Plaintiffs argue that the statistics upon which Defendants rely are not the most relevant to the instant inquiry, as they reflect cases in all courts in the United States, rather than in the Western District of Texas alone. Resp. 21. They assert that the Federal Court Management Statistics provide the most relevant statistics. *Id.* These statistics indicate that "the median time in this Court from filing of a civil case to disposition has fluctuated between 8.0 months and 9.5 months since 2001," making the difference in case duration between German courts and courts in the Western District of Texas "somewhere between .8 months and 2.2 months." *Id.* Plaintiffs assert that this difference is not drastic enough to support dismissal.[17] *Id.*

---

**17.** Plaintiffs correctly note that although the Western District of Texas has the fourth-highest number of weighted filings in the United States, it also has the eight-highest rate of terminations, due to the heavy criminal docket. Resp. Ex. J. However, the El Paso Division of the Western District of Texas, with four of the thirteen district judges in the District, has a very large portion of the filings. The 2007 Fiscal Year Statistics for the United States District Court, Western District of Texas reflect that the El Paso Division had more than 50% of the total criminal filings in the District. The Court finds that there may be a legitimate argument that the high number of weighted filings in this division delays its consideration of substantive motions. However, the "understandable temptation in a busy district ... to transfer cases that can as appropriately or even slightly more appropriately be tried elsewhere ... must be resisted. The plaintiff's choice of forum should normally be respected." *Manu Intern. S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir.1981) (quoting *Calavo Growers of Cal. v. Generali Belgium*, 632 F.2d 963, 969 (2d Cir.1980) (Newman, J, concurring)).

Although Defendants have presented evidence that German courts generally are able to dispose of cases more quickly, and have less crowded dockets than either American courts generally or courts in the Western District of Texas in particular, they fail to address how dismissing this group of German Plaintiffs would actually reduce the burden on the Court, which is, ultimately, the purpose underlying this factor. The American Plaintiffs will continue to pursue their claims in this Court, and Defendants have not asserted that dismissing this group of German Plaintiffs would significantly lessen the burden on the Court's docket. Accordingly, the Court finds this factor weighs against dismissal.

### 2. Local Interests

Defendants assert that "Germany has a much stronger interest in this controversy than does Texas, if Texas has any interest at all in the resolution of these claims." Mot. 22. With respect to the German Plaintiffs who have alleged a connection to Fort Bliss or another United States military base, Defendants assert, "the majority of their alleged exposure took place in Germany," concluding that "the Western District of Texas has little or no local interest in the claims of these German plaintiffs." Reply 15–16.

Plaintiffs assert that the "plaintiffs, [who were trained on the radar devices at Fort Bliss or other United States military bases] were exposed to ionizing radiation and received (or failed to receive) warnings at these bases, [and therefore] sustained some portion of their injury on United States soil." Resp. 22. Plaintiffs further

argue that there is a general local interest in El Paso, Texas, because the case involves training and other activities which occurred at Fort Bliss, an important part of the El Paso community. Id. at 23. "Fort Bliss contributes billions of dollars to the regional economy," and "[a]t any given time, approximately 200 of the active duty military personnel of Fort Bliss are German soldiers." Id. at 23–24.

Germany certainly has an interest in the resolution of its citizens and former service members' claims. However, the United States also has an interest in the resolution of claims brought by Plaintiffs who allege that part of their injury occurred at Fort Bliss or another United States military base. As all of these Plaintiffs' claims are linked to Fort Bliss or another United States military base, the Court agrees with Plaintiffs that the United States generally, and El Paso in particular, have a substantial interest in the claims at bar.[18] The Court cannot ignore the fact that Plaintiffs' claims implicate not only American corporations, but the United States Army and Fort Bliss. These considerations significantly increase the interest in having this dispute resolved locally. Accordingly, the Court finds that this factor weighs against dismissal.

### 3. Jury Duty Imposed on Community with No Relation to Controversy

Defendants assert that these Plaintiffs' "only tenuous connection to this community is that they spent a few months stationed at a United States army base, which is hardly a 'relationship' between the com-

---

18. With respect to the German Plaintiffs who allege they were trained or worked on radar devices at United States military base other than Fort Bliss, the Court agrees with Plaintiffs that a motion to transfer their claims to another United States District Court pursuant to 28 U.S.C. § 1404(a) may be more appropri- ate than a motion to dismiss pursuant to the doctrine of forum non conveniens. Resp. 22 n. 3. Accordingly, the Court will decline to dismiss the claims of those Plaintiffs for reasons mirroring the reasons set forth herein with respect to the Plaintiffs alleging that part of their injury occurred at Fort Bliss.

munity and this controversy." Mot. 22. Plaintiffs assert that "Fort Bliss, and therefore the entire El Paso community, has a strong connection with radar devices used by NATO countries during the Cold War." Resp. 24.

Although Fort Bliss was the site for much of the training related to the radar devices at issue, the Court finds that this is not a connection giving rise to a local interest in any conceivable litigation related to such devices. However, in the instant case, Plaintiffs have alleged they were injured, at least in part, at Fort Bliss, and the Court finds that this connection is substantial enough that the local community has an interest in the outcome, and therefore the imposition of jury duty is not an unreasonable burden. "Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil*, 330 U.S. at 509–10, 67 S.Ct. 839. Because the Court has found the local community has a significant interest in the resolution of this litigation, the Court concludes that this factor does not support dismissal.

#### 4. Difficult Problems Resolving Conflict of Law

Defendants assert that because "Texas conflict of law rules require this court 'to apply the law of the forum with the most significant relationship to the occurrence and the parties,' . . . German law may very well govern this case." Mot. 22 (quoting *Taylor v. Daimler Chrysler Corp.*, 196 F.Supp.2d. 428, 434 (E.D.Tex.2001)). However, Defendants argue that this factor weighs in favor of dismissal not because German law may govern, but because the Court will have to engage in a choice of law analysis. *Id.* at 22–23. Defendants assert "[i]t is the need to 'untangle' conflict of law issues that *forum non convenies* dismissal seeks to prevent."

Reply 16 (citing *Piper Aircraft*, 454 U.S. at 251, 102 S.Ct. 252).

"[T]he public interest factors point towards dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" *Piper Aircraft*, 454 U.S. at 251, 102 S.Ct. 252 (quoting *Gulf Oil*, 330 U.S. at 509, 67 S.Ct. 839). Plaintiffs nonetheless argue that more recent Fifth Circuit caselaw stands for the proposition that a court's having to undertake the "mere effort of a choice-of-law analysis" does not weigh in favor of dismissal. Resp. 24–25 (citing *Schexnider*, 817 F.2d at 1164).

■ The Court agrees that the simple fact that foreign law would govern a case "is not in itself reason to apply the doctrine of forum non conveniens" and grant a dismissal. *Schexnider*, 817 F.2d at 1164 (citations omitted). In *Schexnider*, the Fifth Circuit approvingly cited the Second Circuit's holding that courts "must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *Id.* (citing *Manu Intern. S.A.*, 641 F.2d at 63). "Proof of foreign law may be a burden in this case, but it is not alone enough to push the balance of convenience strongly in favor of [the] defendant[s]." *Manu Intern.*, 641 F.2d at 68.

The Court finds the reasoning in *Schexnider* persuasive in the instant action because it appears that a conflict of law analysis will likely be required regardless of the forum. If the case proceeds in Germany, a conflict of laws analysis will be necessary insofar as Plaintiffs allege their injury took place in multiple locations and, as Plaintiffs' expert submits, "German courts . . . apply the law of the place of a defendant's wrongful conduct rather than the place of injury." Resp. 25; Resp. App. Ex. O. Insofar as the "forum non conveniens doctrine is 'designed in part to help

courts avoid conducting complex exercises in comparative law,'" *In re Air Crash,* 821 F.2d at 1158 (quoting *Piper,* 454 U.S. at 251, 102 S.Ct. 252), there is no reason to believe convenience would be furthered by dismissal in this instance. *See also Prevision Integral,* 94 F.Supp.2d at 781–82 ("Because 'foreign law' will apply regardless of the forum, ... the application of 'foreign law' is unavoidable," and does not support dismissal).

### 5. *Conclusion of Public Interest Factors*

The Court finds that the relevant public interest factors do not tip the scale in Defendants' favor, and the Court finds that Defendants have failed to carry their burden with respect to those German Plaintiffs alleging that a portion of their injury occurred at Fort Bliss or another United States military base.

## IV. CONCLUSION

After careful consideration, the Court finds that the private and public interest factors do not convincingly support dismissal of the following German Plaintiffs who allege some exposure to the radar devices in the United States: Gerhard Hardt, Peter Baltes, Markus Bankmann, Franz Bathke, Ulrich Behrendt, Horst Elschner, Christian Knorr, Ralph Kurowski, Manfred Loos, Jurgen Messingschlager, Hartmut Metsch, Henning Meyer, Jurgen Nassauer, Lothar Neumann, Heinz Schenk, Harald Schwankl, Heiko Soyka, Herbert Uebler, Klaus von Kopte, Norbert Brauer, Gerhard Bohning, Ulrich Borsch, Jurgen Bosecker, Jurgen Burgemeister, Enno Edzards, Ulrich Hantzschel, Harald Kuhl, Wolfgang Lauber, Dirk Dee Leeuw, Armin Mittler, Konrad Muhlbauer, Klaus Richter, Andreas Romer, Peter Scharf, Henning Schimm, Klaus Schneider, Herbert Schonberger, Olaf Schulz, Roger Ste-

inbauer, Guenter Vietor, Detlef Frenzel, Alban Josef Hirsch, Peter Zacharias, Klaus Didier, Klaus–Dieter Fischer, Werner Jordan, Bernd Naumann, Manfred Rutten, Klaus Uwe Schneider, Ingo Schon, Gerhard Strauss, Harry Topker, Ernst Vogel, Klaus–Dieter Westphal, Ralf Wielputz, Gerhard Katz, Erich Klinkert, Fritz Tielsch, Udo Walter, and Peter Zacharias. *Cf. Vasquez,* 325 F.3d at 674 (holding dismissal appropriate in vehicle and tire product liability case because the only factor favoring retention of the case in the United States was the "original design of the vehicle and tires"); *Gonzalez v. Chrysler Corp.,* 301 F.3d 377, 383 (5th Cir.2002) (holding dismissal appropriate in vehicle product liability case where plaintiff, victim, and witnesses were foreign citizens, the accident occurred on foreign soil, and the primary connection to the United States was air bag design); *Baumgart,* 981 F.2d at 838 (holding dismissal appropriate in plane crash litigation where crash occurred in Germany, all plaintiffs were German citizens, and the only connection to the United States was information relating to plane design). The Court finds that although Germany is an adequate and available forum, and affording these Plaintiffs' choice of forum a lesser degree of deference, Defendants have not met their burden to show that the private and public factors weigh in favor of dismissal, and Defendants' Motion will be denied in part.

However, with respect to all other Plaintiffs of German nationality, the Court is convinced that it is in the interest of convenience for the parties for the Court to sever their claims pursuant to Rule 21, and dismiss them pursuant to the doctrine of forum non conveniens. The Court finds that Germany is an adequate and available forum, and that Defendants have demonstrated that the relevant private and public interest factors weigh in favor of dismissal of those German Plaintiffs who allege no

connection between their injuries and the United States. Affording those Plaintiffs a lesser degree of deference, the Court concludes that the balance of factors weighs in favor of the German forum. "'The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice.'" *In re Air Crash*, 821 F.2d at 1162 (citing *Koster*, 330 U.S. at 527, 67 S.Ct. 828). Based on the above factors, the Court finds dismissal will serve the ends of justice. A forum non conveniens dismissal is, therefore, appropriate with respect to those Plaintiffs, and Defendants' Motion will be granted in part. Furthermore, with respect to Defendants' Rule 19 Motion, the Court finds that the arguments set forth therein may be affected by the Court's dismissal of many of the German Plaintiffs, and therefore the Motion should be dismissed without prejudice to re-filing in light of the Court's decision herein.

Accordingly, **IT IS ORDERED** that Defendants Lucent Technologies, Inc., General Electric Company, Raytheon Company, and Honeywell International, Inc.'s "Motion to Sever and Dismiss the German Plaintiffs' Claims Pursuant to the Doctrine of *Forum Non Conveniens* and Brief in Support Thereof" (Docket No. 33) is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that the claims of Andreas Bollwerk, Herbert Brenner, Klaus Didier, Siegfried Dowerk, Alfred Drenkard, Bernd Eckert, Gerhard Gahler, Wolfgang Gleiss, Michael Gunkel, Hugo Heimberg, Wilfried Hillenbach, Jorg Hofman, Gert Ilgner, Elmar Kleimann, Kurt Klose, Wolf–Dietrich Klose, Gerhard Koprian, Heinz–Jurgen Krause, Helmut Krause, Holger Labuschewski, Detlev Langenhahn, Gerhard Lehnert, Wilfried Leier, Horst Luckel, Rolf Mikalauski, Gerd Moller, Raymund Muller, Bernd Naumann, Claus Otte, Edgar Pfeiffer, Friedrich Pfeiffer, Wolfgand Raab, Rolf Rabe, Paul Raters, Dieter Rohner, Andreas Rossback, Lothar Ruger, Peter Schmitt, Manfred Scholz, Dieter Skiba, Ulrich Stute, Dietmar Such, Fritz Tielsch, Reinhard Wetter, Ralf Wielputz, Otto Arendt, Bernd Bauer, Horst Berthold, Gunter Besmehn, Reinhard Borm, Achim Brunnenmiller, Gunther Dargsz, Manfred Deutsch, Wilheim Dreschsler, Olaf Eschrich, Karl–Heinz Fehrenbach, Johann Fierbeck, Herbert Haasen, Otmar Hagemann, Hans–Joachim Irion, Jurgen Kerber, Walter Kling, Peter Kniedl, Dieter Konopka, Jochen Lorcher, Siegfried Mayer, Jurgen Meyer, Wolfgang Muller, Klaus Plauschinat, Martin Preis, Guido Renneberg, Manfred Schmitteckert, Rainer Scholz, Uwe Scholz, Josef Schultheis, Rolf Thier, Reinhard Vollmann, Sieghard Wermke, Bernd Roth, Manfred Behrendt, Roland Belser, Volker Bornemann, Gunther Bruckner, Uwe Cordts, Arthur Demmelmaier, Uwe Detjen, Ludwig Furman, Dirk Grabowski, Detlev Hanebeck, Wolfgang Hassler, Manfred Haubrich, Maik Hauer, Michael Hein, Waldemar Herold, Hermann Holsten, Uwe Jacobs, Christian Jung, Rudiger Kasparek, Gerhard Katz, Josef Kemser, Jurgen Kraemer, Christian Langenbehn, Franz Marchetti, Wilhelm Maul, Jurgen Moller, Peter Muller, Peter Mund, Reinhard Neuwirth, Herald Prieger, Hartmut Rehling, Xaver Rembeck, Wilhem Rossback, Wolfgang Rothe, Gerd Sauer, Bernhard Schairer, Peter Schluter, Jorg Schmeing, Herbert Schmid, Helmut Schmidt, Dieter Schoneich, Olaf Schultz, Edmund Schulz, Rudiger Schutzmannsky, Hans–Jurgen Seibod, Uwe Hans Seiler, Freddy Smarza, Jurgen Spath, Dieter Staegemann, Gert Freiherr von Steinecker, Ralf Wojeciechowski, Peter Wuhnsen, Henner Wurm, Reinhard Zapf, Frank Zielke, Herbert Kollakowski, Herwart Saling, Karl–Heinz Schatz, Dietmar Schimmel, Heinz Dank-

enbring, and Karl–Heinz Faust are **SEVERED** from the claims of the other Plaintiffs and **DISMISSED** from the four suits consolidated into the above-captioned action. Should the above-listed Plaintiffs be unable to reinstate their action and the highest German judicial tribunal reaffirm such decision, the Court will reactivate their claims upon notice from the parties.

**IT IS FINALLY ORDERED** that Defendants Lucent Technologies, Inc., General Electric Company, Raytheon Company, and Honeywell International, Inc.'s "Motion to Dismiss for Failure to Join a Party Under Rule 19" (Docket No. 35) is **DENIED WITHOUT PREJUDICE TO RE-FILING.**